JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Julie Luft Signer, appeals the trial court's order finding her in contempt of court in her divorce proceedings against defendant, Benjamin Signer. In her divorce complaint, Julie asked for a civil protection order from domestic violence, which order the court granted ex parte on the day of the filing.
 {¶ 2} In September 2002, the parties reached a consent agreement on the order of protection that gave temporary custody of the parties' only child, a daughter ("the daughter"), to Julie and permitted Benjamin regular supervised visitation with her at the Jewish Community Center. This Civil Protection Order also stated there was no finding of violence on the part of Benjamin. In June of 2004, the court amended the visitation portion of this order. The new order gradually eliminated the supervision for Ben's visitations with the daughter, and it allowed him to drive onto the property when he came to pick up the daughter. Moreover, after the end of August, father's visitation would not be limited as to location or supervision. Julie appealed this amendment, but the appeal was dismissed for a lack of final appealable order.[1]
 {¶ 3} When Julie refused to obey the modified visitation order, Benjamin filed a motion to have her held in contempt of court. Julie also failed to obey court orders to provide medical releases, to submit to the court psychiatric clinic for evaluation, and to submit to Benjamin's expert witness for evaluation. During the time between the modified visitation order and the first scheduled contempt hearing, Julie fired her attorney. The court continued the hearing for two weeks to allow her to arrange for new counsel and to allow counsel to prepare for the hearing. Because the court had a scheduling conflict, the hearing was then reset for another week. Julie was notified of the new hearing date both by telephone from the court's secretary and by written notice of continuance via U.S. mail.
 {¶ 4} At the rescheduled hearing, Julie, a licensed attorney in this state, represented herself. She appeared two hours late, did not answer questions put to her in a straightforward manner, and then told the court she had to leave to pick up the daughter. The court told Julie that it was "willing to drop these proceedings or at least suspend these proceedings" if she were "willing to go on the record and indicate that" she would "comply with the visitation order from June 8th," which ordered the revised visitation with Benjamin. Julie stated that she would need to think about the court's offer. The court told her she could think about it overnight and that the hearing would resume at 1:30 the next afternoon.
 {¶ 5} When she failed to appear the next day, the court issued an order finding that Julie
* * * has continuously and blatantly failed to comply with this Court's previous order * * *. [Julie] has continued to refuse [Benjamin] all subsequent supervised visits since June 8, 2004, because they were not scheduled at the Jewish Community Center.
The Court further finds that [Julie] has failed to comply with this Court's order * * * to submit to further evaluation by [Benjamin's] expert, Dr. Mark Lovinger.
The Court further finds that [Julie] * * * has continuously, for the past 12 months, failed to sign releases for the medical records as required by the * * * Court order.
The Court further finds that, due to [Julie's] failure to comply with the previous Court orders, she is found to be in contempt for her actions, but she should be given the opportunity to purge her contempt.
* * * Julie Luft Singer is hereby sentenced to 14 days in jailfor said contempt. However, [Julie's] sentence will be purged provided that she:
1) Provide makeup parenting time to [Benjamin] as follows:
* * *
2) Schedule an appointment with Dr. Mark Lovinger within the next seven (7) days, be present at said appointment, and cooperate with Dr. Lovinger at said appointment, including bringing the minor child to said appointment.
* * *
3) Sign, within the next seven (7) days, any and all releases for her medical records to be forwarded to Judge Anthony J. Russo for in-camera inspection; and
4) Schedule psychological testing and evaluation, within the next 14 days, with the Family Conciliation Department of the Court, * * *.
* * * In the event that [Julie] does not purge her contempt, as herein indicated, this Court may impose the jail sentence ordered. In the event it is made to appear to the Court, by affidavit, that the above orders of the Court are not being complied with, a Citation shall immediately issue without further notice requiring the defaulting party to appear instanter to show cause why sentence should not be ordered into immediate execution.
Judgment Entry August 19, 2004, emphasis in original.
 {¶ 6} Julie failed to comply with the court's order and the court held another hearing on September 29, 2004, at which Julie signed an Agreed Judgment Entry to reset the failure to purge contempt hearing to the middle of October. This Agreed Judgment Entry indicated that Julie would begin to comply with the amended visitation order and the discovery orders, which to this point she had refused to obey. Despite signing this agreement, Julie went to great measures to avoid complying with the visitation order and the discovery order, including filing an affidavit of prejudice against the judge.
 {¶ 7} After the Supreme Court dismissed the affidavit of prejudice, the court rescheduled the hearing. Julie arrived four hours late for this hearing, and the court rescheduled it again. As the court noted at the December 13th hearing, "[t]o ensure beyond any doubt that [Julie] was adequately informed of the nature and extent of the charges against her, and to completely protect [Julie's] constitutional right to be adequately prepared to defend herself, the Court personally served her with a copy of the judgment entry/order to appear, and reset the matter for one week later * * *." December 13, 2004 Hearing Tr. 119.[2]
The court also sent a process server, who testified that he attempted three times to serve her at her home and eventually attached the notice of hearing to her door.
 {¶ 8} Julie was represented by counsel at the December 13, 2004 hearing, but Julie herself failed to appear. Following a hearing at which Benjamin, the guardian ad litem for the daughter, and the process server testified, the court again found Julie "in contempt for failing to comply with four separate orders of this Court * * *." Id. at 120. The court noted that Julie is an attorney who had "contemptuously and intentionally refused to obey several valid orders of this Court." Id. at 120. The court then noted it doubted that Julie would comply with the court's orders unless it imposed the sentence. It nevertheless afforded her "one last opportunity to partially purge her contempt and avoid going to jail" and gave her until December 16th to comply with its orders. Id.
 {¶ 9} On December 15, 2004, Julie appealed the court's finding of contempt,[3] which finding is being appealed in the case at bar. She states only one assignment of error, which has five "issues." The assignment of error states:
I. THE TRIAL COURT ERRED AS A MATTER OF LAW, IN FINDING APPELLANT IN CONTEMPT FOR VIOLATING INVALID ORDERS AND FOR IMPOSING CONTEMPT SANCTIONS.
 {¶ 10} The first issue under this assignment of error states:
ISSUE ONE: WHETHER THE TRIAL COURT MAY, SUA SPONTE, MODIFY AN AGREED UPON CIVIL PROTECTION ORDER ("CPO") WITHOUT AN EVIDENTIARY HEARING? APPELLANT AND THE MINOR CHILD WERE BOTH PROTECTED PERSONS UNDER THE TERMS OF THE CPO AND, AT THE TIME OF THE TRIAL COURT'S ACTIONS, THE MINOR CHILD WAS UNREPRESENTED.
 {¶ 11} At issue here is whether the trial court had jurisdiction to issue ex parte or sua sponte orders modifying the custody/visitation order. After Julie obtained an ex parte temporary protection order against Benjamin, the parties stipulated to an agreed modified order that included visitation to Benjamin "two times per week, one hour per session, at the Jewish Community Center. [Julie] shall transport the child to the Jewish Community Center at times agreed upon by the parties. [Julie] to supervise visits." Civil Protection Order September 19, 2002.
 {¶ 12} Julie argues that the trial court lacked jurisdiction to amend the Civil Protection Order because the expiration date on the order was not until 2007 and because the statute does not provide for amendment. She claims, therefore, that all the court's orders changing the terms of the civil protection order were invalid and she therefore cannot be found in contempt for ignoring them. We agree.
 {¶ 13} Civil protection orders are governed by R.C. 3113.31, which provides for temporary custody orders as follows:
(E) (1) After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members. The order or agreement may:
* * *
(d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights * * *.
This statute authorizes the court to issue an order allocating parental rights and responsibilities.
 {¶ 14} In its role as the court in which Julie filed for divorce pursuant to this statute, the trial court had the authority to issue a new order allocating parental rights and responsibilities. If the court had written a new order, the order contained in the civil protection order would have been vacated but the court would have been required to comply with the Civil Rules, including Civ.R. 75(N).
 {¶ 15} This section of the rule states in pertinent part:
(1) When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proofby affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, * * * may make a temporary order regarding the support, maintenance, and allocation of parental rights andresponsibilities for the care of children of the marriage, whether natural or adopted, during the pendency of the action for divorce, annulment, or legal separation. (Emphasis added.)The second subdivision, which addresses the situation in the case at bar, states the requirements for obtaining a modification of a temporary custody/visitation order:
(2) Counter affidavits may be filed by the other party withinfourteen days from the service of the complaint, answer, counterclaim, or motion, all affidavits to be used by the court or magistrate in making a temporary * * * order allocating parental rights and responsibilities for the care of children.Upon request, in writing, after any temporary * * * orderallocating parental rights and responsibilities for the care of children is journalized, the court shall grant the party sorequesting an oral hearing within twenty-eight days to modify the temporary order. A request for oral hearing shall not * * * change the allocation of parental rights and responsibilitiesuntil the order is modified by journal entry after the oralhearing. (Emphasis added.)
 {¶ 16} Although Benjamin filed a motion, with an affidavit attached, to modify the custody/visitation order and although the court had scheduled a hearing to consider his motion, the record does not reflect that any such hearing took place. The purpose of the hearing mandated by the civil rule is to protect the due process rights of the parent opposing the modification. In the case at bar, however, instead of holding a hearing, the court proceeded directly to modify the custody/visitation order contained in the civil protection order. If this case were controlled by Civ. R.75(N), therefore, Julie would have had a valid due process argument.
 {¶ 17} We find no authority, however, for the trial court to modify a civil protection order. R.C. 3113.31(E)(3)(b) provides for a trial court in a divorce proceeding to issue a new order regarding parental rights and responsibilities. In the case at bar, however, the custody order was issued as a part of the civil protection order, as opposed to the ordinary pre-decree orders for temporary custody. In its judgment entry, the court made it clear that the modification was not pursuant to Civ.R. 75(N); rather, the trial court's order explicitly stated: "The Protection Order of September 19, 2002 is hereby modified * * *." Judgment Entry of June 1, 2004. Because the temporary custody order was issued as a part of a civil protection order, Civ. R. 75(N), does not control here.
 {¶ 18} Modifying a protective order is controlled by R.C.3113.31(E)(3)(b), which limits any modifications to those expressly stated in the civil protection order:
(3) (a) Any protection order issued or consent agreement approved under this section shall be valid until a date certain, but not later than five years from the date of its issuance or approval.
(b) * * * any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce * * * brought by the petitioner or respondent issues anorder allocating parental rights and responsibilities for thecare of children * * *. (Emphasis added.)
 {¶ 19} This statute does not vest any authority in the court to modify the terms of the allocation of parental rights andresponsibilities under the civil protection order.[4] Thus the court erred in modifying the civil protection order. Moreover, even if the court had intended to modify the order under Civ.R. 75(N), its failure to hold a hearing violated the civil rule, and the modification order would be void. Accordingly, this argument has merit.
 {¶ 20} For continuity, we address the fifth issue next:
ISSUE FIVE: WHETHER THE TRIAL COURT MAY FORCE A PARTY TO WAIVE PRIVILEGED COMMUNICATION AND FORCE THE RELEASE OF SUCH INFORMATION AGAINST THE PARTY'S WILL?
 {¶ 21} The trial court held Julie in contempt for her ignoring several of its orders, not just the visitation order. Under this issue, Julie objects to the trial court's order that she make her medical records from her psychiatrist available to Benjamin's expert witness. She claims that those records are protected by physician-patient privilege. "In Ohio, the physician-patient privilege is governed by R.C. 2317.02(B). As a general rule, a physician may not testify concerning a communication made to the physician by a patient. R.C. 2317.02(B)(1)." Rulong v. Rulong, Cuyahoga App. No. No. 84953,2004-Ohio-6919, ¶ 7.
 {¶ 22} There are, however, exceptions to this rule. In a custody proceeding, any party seeking custody has put his or her mental and physical health in issue. R.C. 3109.04(F)(1)(e) describes what factors the court shall consider:
(F) (1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
* * *
(e) The mental and physical health of all persons involved in the situation * * *. This court has held "that a party seeking custody of a child in a divorce action makes his or her mental and physical condition an issue to be considered by the court in awarding custody and that the physician-patient privilege does not apply." Gill v. Gill, Cuyahoga App. No. 81463, 2003-Ohio-180, ¶ 19, citing Neftzer v. Neftzer (2000),140 Ohio App.3d 618, 748 N.E.2d 608.
 {¶ 23} The trial court did not err, therefore, in ordering Julie to provide a release of her psychological treatment records for an in-camera review by the court. Accordingly, this argument lacks merit, and the trial court's imposition of contempt against Julie for failing to comply with the court's order was legal and enforceable.
 {¶ 24} For her third issue, Julie states:
ISSUE THREE: WHETHER THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS IN CONDUCTING A HEARING ON MOTIONS WHICH WERE NOT PROPERLY SERVED UPON APPELLANT OR PROPERLY NOTICED FOR HEARING?
 {¶ 25} Julie claims that she was not properly served with notice of the contempt hearings against her.[5] Her claim that the court failed to provide her with adequate notice of the contempt hearing and its possible consequences is without basis.
 {¶ 26} At the July 28th hearing, Julie objected that she did not have counsel. The hearing had already been postponed two weeks, however, to allow her to obtain counsel and then postponed another week for the court's convenience. She had three weeks, therefore, to obtain counsel before this hearing. Additionally, during the pendency of this case, she has had a veritable who's who of the local bar representing her.[6] As demonstrated by the court's statements at the December 13th hearing, the court went to great lengths to accommodate her.
 {¶ 27} The record is replete with examples of the court bending over backwards to ensure that Julie had notice of the contempt hearings and the opportunity to prepare for them. Any claim that the court failed to comply with the statute is unfounded. Accordingly, this issue lacks merit.
 {¶ 28} For her fourth issue, Julie states:
ISSUE FOUR: WHETHER THE TRIAL COURT ABUSED IT'S [sic] DISCRETION IN FINDING APPELLANT IN CONTEMPT BASED UPON INSUFFICIENT EVIDENCE?
 {¶ 29} Julie fails to argue this issue in her brief. Nonetheless, we will review it. Even though Julie's refusal to comply with the court's modified visitation order was not in contempt, the record is replete with examples of her failure to comply with the rest of the trial court's orders, which are enforceable orders: she did not appear in the court psychologist's office for several of the appointments she made in response to the court's order that she submit to testing; she failed to provide the court with the medical releases it requested; she failed to attend the defense psychological exam the court had ordered; and she failed to present her daughter to the defense psychological exam the court ordered. The trial court had copious reasons for imposing a contempt order on Julie, even without the visitation issue. Her fourth argument, therefore, lacks merit and the court had the authority to impose contempt sanctions on Julie.
 {¶ 30} For her second issue, Julie states: ISSUE TWO: WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR IN HEARING MOTIONS THAT WERE PATENTLY DEFICIENT?
 {¶ 31} Although Julie objects in her brief to the form of Benjamin's motions, she fails to explain why she believes that Benjamin's motions for contempt were "patently deficient." Pursuant to App.R. 12(A)(1)(a)(2), "[t]his court may disregard an assignment of error * * * if the party raising it * * * fails to argue the assignment * * *." Because Julie points to nothing specific in the motions that is deficient, we disregard this issue. We further note that the trial court could find Julie in contempt for her disobedience of the other court orders on its own, without a motion from Benjamin.
 {¶ 32} The trial court's imposition of sanctions against Julie for failure to comply with the discovery orders is sustained. The trial court's imposition of sanctions on Julie for failing to comply with the modified visitation order is vacated. The trial court is ordered to remove the contempt sanctions resulting from Julie's failure to comply with the modified visitation order.
Vacated in part, affirmed in part, and remanded.
It is ordered that appellant and appellee split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Kilbane, J., concur.
[1] See State ex rel. Signer v. Russo, Cuyahoga App. No. 85173, 2004-Ohio-4744.
[2] The court never separately journalized this service on the docket.
[3] Note that a finding of contempt does not become a final appealable order until sentence is actually imposed. As this court has previously explained: "In order for there to be a final order in contempt of court proceedings, there must be both a finding of contempt and the imposition of a sentence or penalty. The mere adjudication of contempt of court is not a final appealable order until a sanction or penalty is also imposed."McCrea V. McCrea (Nov. 20, 1986), Cuyahoga App. No. 51324, 1986 Ohio App. LEXIS 9138, at *3, citing Cooper v. Cooper (1984),14 Ohio App.3d 327; Chain Bike v. Spoke 'N Wheel, Inc. (1979),64 Ohio App.2d 62; Pelligrino v. Pelligrino (1936), 21 Ohio Law Abs. 572.
[4] Upon the filing for divorce, on the other hand, a court could exercise its jurisdiction to issue a new order.
[5] In her brief, Julie cites R.C. 2705.031, the statute governing contempt actions for failure to pay support or comply with a parenting or visitation order. As noted above, however, the enforceable contempt rulings against Julie concern her failure to obey court-ordered discovery. Julie has failed to argue or demonstrate that this statute has any application to those issues.
[6] Among the counsel whose appearance on Julie's behalf is reflected in the record are: Marshall Wolf, Amy Gozdavonic, Andrew Zashin, Robert Rotari, Susan Gragel, Joe Stafford, Kenneth Lewis, Margaret Stanard, Larry Zukerman, Edward Shyum, Robert Dubyak, John Heutsche, and Steven August.