**YAZDANI–ISFEHANI, Appellee,**

v.

**YAZDANI–ISFEHANI, Appellant.**

[Cite as *Yazdani–Isfehani v. Yazdani–Isfehani,* 170 Ohio App.3d 1, 2006-Ohio-7105.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 06CA6.

Decided Dec. 26, 2006.

Susan Gwinn, for appellant.

K. Robert Toy, for appellee.

KLINE, Judge.

{¶ 1} Ramin Yazdani–Isfehani ("father") appeals two separate judgments of the Athens County Court of Common Pleas. The first overrules his objections to the magistrate's decision and determines that the court lacked jurisdiction to consider his motion for visitation in the context of Case No. 04DV083, a domestic-violence civil-protection order ("CPO") proceeding. The second overrules the father's

objections to the magistrate's decision and denies his motion for an order requiring Elizabeth Yazdani–Isfehani ("mother") and the parties' six minor children to submit to psychological/psychiatric evaluation by the expert of the father's choice in the context of Case No. 05DM008, the parties' divorce proceeding.

{¶ 2} In his first assignment of error, the father contends that the trial court erred in finding that it lacked jurisdiction to modify the CPO it issued to permit the father to exercise visitation. Because we find that R.C. 3113.31 does not grant a court continuing jurisdiction to modify an allocation of parental rights and responsibilities in the context of a CPO proceeding after it issues a final appealable CPO, we agree with the trial court's determination that it lacked jurisdiction to consider the father's request for visitation in the context of the CPO proceeding. However, we conclude that the trial court abused its discretion by failing to sua sponte consolidate the CPO and divorce proceedings to consider the father's motion in the context of the divorce proceeding because (1) a parent has a fundamental liberty interest in the care, custody, and management of his or her child, *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, (2) both the magistrate and trial court erroneously led the father to believe that they would reconsider the issue of visitation in the context of the CPO proceedings, and (3) the father's motion for visitation was pending for nearly one year in the CPO proceeding before the court gave the father any indication that it lacked jurisdiction to consider his request for visitation in that proceeding.

{¶ 3} In his second assignment of error, the father contends that the trial court erred in prohibiting him from having an independent psychological evaluation of the parties and their children. Because we find that the order the father is appealing is not a final appealable order, we find that we lack the requisite jurisdiction to consider the merits of this assignment of error. Accordingly, we reverse the trial court's judgment in part, affirm it in part, and remand this cause for further proceedings consistent with this opinion.

I

{¶ 4} The parties married on December 20, 1987. They have six children born as issue of the marriage, namely, Isaiah Luke (DOB: 09/26/1988), Loruhamah Hannah (DOB: 09/26/1988), L. Elijah (DOB: 03/29/1990), Josiah David (DOB: 11/29/1991), Abigail E. (DOB: 07/17/1994), and Shiloh I. (DOB: 11/26/1995). During the marriage, the parties resided in Pataskala, Ohio. However, in October 2004, the mother left the marital residence with all six of the children and moved to her mother's home in Albany, Ohio. Thereafter, the mother filed a petition for a CPO in the Athens County Court of Common Pleas, in which she alleged that

the father had (1) hit the children with a ruler, plastic hanger, his hands, and other items, leaving marks, (2) kicked her out of the bedroom and terrorized her in front of the children, (3) told her he spent 24 hours a day thinking about how he could get rid of her, and (4) told her he did not beat her because God would not let him, but that he could do whatever he wanted to the children. The mother stated that the father's behavior escalated over a couple of years, and that she was afraid for herself and the children.

{¶ 5} The mother requested that the court issue a CPO to protect her and the children from the father. She also requested that the court temporarily allocate parental rights and responsibilities and order the father to provide financial support for her and the children.

{¶ 6} Pursuant to the mother's petition, the court issued an ex parte CPO protecting the mother and all six of the parties' children and scheduled a full hearing for October 22, 2004. At the hearing, the magistrate heard testimony from the mother, the parties' eldest daughter, Loruhamah, and the father regarding the domestic-violence allegations. However, when the father sought to testify regarding the children's progress or lack of progress in their home schooling, the mother's counsel objected, stating, "This sounds like a divorce proceeding." The magistrate then stated, "Well[,] I'll tell you it is also a request for custody. Your client has requested that she be named the legal custodian of these children. I don't know that we are going to have time today to get into that, so I'm going to ask that we not get into those kinds of questions, and restrict ourselves that if it is going to remain in the Court that would certainly become an issue."

{¶ 7} At the conclusion of the father's testimony, the magistrate inquired as to whether either party intended to file for divorce and indicated a reluctance to conduct further investigation into custody, parenting, and child support issues if one of the parties was going to initiate other proceedings. The mother's counsel indicated that the mother could not file for divorce in Athens County until she had resided in the county for 90 days. The father's counsel indicated that his client opposed divorce on religious grounds. The magistrate stated that she would appoint a guardian ad litem ("GAL"), and recommend that the court maintain the ex parte order suspending the father's visitation, pending the appointment of the GAL and further investigation regarding the children's best interests.

{¶ 8} However, in her proposed decision, the magistrate found that the mother had reason to fear that the father would cause serious physical harm to her or the children. Therefore, the magistrate concluded that the court should grant the mother a five-year CPO. The magistrate recommended that the court issue a CPO (1) protecting the mother and the children from the father, (2) designating

the mother as the temporary residential parent and legal custodian of the minor children on the condition that no corporal punishment take place while the children are under the jurisdiction of the court and that each of the children is independently tested through either the Alexander Local School system or SEOVEC to assure that the home schooling program supervised by [the mother] has not resulted in educational neglect, and (3) affording no parenting time to the father "until a Guardian ad Litem has been appointed for the children; an investigation has been completed; a written report from the Guardian has been filed with the Court; and further hearing has been held to address this and other issues related to the children." Neither party filed objections to the magistrate's October 25, 2004 decision.

{¶ 9} After issuing her decision recommending the issuance of a CPO, the magistrate appointed a GAL for the children. The mother then filed a motion for child support order requiring the father to pay guideline child support of $1,874.57 per month plus poundage. On November 23, 2004, the trial court issued a domestic-violence CPO following a full hearing, in conformity with the magistrate's decision. The CPO contains a notice indicating that it is a final appealable order. Additionally, the record contains a certificate of service indicating that the clerk sent a file-stamped copy of the CPO to the father and his counsel, among others, by regular U.S. mail on November 24, 2004.

{¶ 10} After the court issued the CPO, the court issued an additional entry indicating that the parties had reached an agreement regarding the issue of child support. In accordance with that agreement, the entry required the father to pay $1,500 per month plus poundage commencing on December 1, 2004. Additionally, the magistrate and the GAL jointly conducted interviews with each of the minor children. During those interviews, the children discussed their relationships with their parents and incidents of alleged abuse by the father. All of the children expressed that they feared their father and that they did not wish to see him, even under supervised visitation.

{¶ 11} On January 15, 2005, the mother filed a complaint for divorce in the Athens County Court of Common Pleas. On February 17, 2006, the magistrate appointed a GAL to represent the children in the divorce proceedings.[1]

{¶ 12} The father answered the divorce complaint on February 22, 2005. Several days later, the magistrate appointed a psychologist to perform a custody evaluation in the divorce case and ordered the parties to schedule interviews for themselves and the children. Despite this appointment, the father, desiring to utilize his own psychologist, moved the court for an order requiring the mother

---

1. The magistrate appointed the same guardian in both the CPO and the divorce cases.

and the children to submit to an additional psychological evaluation. The court overruled this motion.

{¶ 13} The record reveals that the father never moved the court for a visitation order in the divorce case. However, on March 10, 2005, he did make such a request by written motion in the CPO case. The magistrate conducted a hearing on May 6, 2005, relative to the father's motion for visitation and two contempt motions. Although all of the motions at issue had been filed in the CPO case, at the commencement of the hearing, the magistrate noted the existence of the "companion" divorce case. At the hearing, the magistrate heard testimony from the parties and several additional witnesses.

{¶ 14} On May 20, 2005, the magistrate issued two separate decisions, the first of which dealt exclusively with the father's motion for custody. The magistrate recommended that based upon the evidence presented at the October 22, 2004 and May 6, 2005 hearings and the interviews with the parties' six children, the court should deny the father's motion for visitation pending submission of the court-ordered psychological evaluations, the GAL's final report, and further hearing on the matter.

{¶ 15} The father objected to the magistrate's decision, contending that the court should permit him to exercise supervised visitation with his children. On February 1, 2006, the trial court issued a decision and judgment entry, overruling the father's objection regarding visitation. The trial court found that it originally decided the issue of visitation when it issued the CPO on November 23, 2004. Because the father failed to object to the magistrate's decision and failed to appeal the issuance of the CPO, which constituted a final order, the trial court determined that it was "unnecessary" for the magistrate to address visitations in the context of the CPO proceeding. The court suggested that it could address the matter in the divorce proceedings.

{¶ 16} On February 13, 2006, the trial court conducted a status conference in the divorce case. The court's February 21, 2006 entry reveals that the parties and the court discussed the fact that the court-appointed psychologist was ill and unable to complete the court-ordered custody evaluation. The entry reflects that the father again sought to employ his own psychiatrist or psychologist to perform the evaluation. The court suggested that any notes or tapes prepared by the court-appointed psychologist might be discoverable, and proposed two possible resolutions: (1) the parties could proceed to a hearing on the merits after the completion of discovery and the submission of the GAL report or (2) the court could appoint another psychologist to complete the evaluation. However, the court specifically found that the father did not have a right to select the court-appointed psychologist.

{¶ 17} The father now appeals the trial court's February 1, 2006 judgment in the CPO proceeding and its February 13, 2006 judgment in the divorce proceeding, raising the following assignments of error: I. "The trial court erred in finding that the court had no jurisdiction to modify a civil protection order to permit visitation to the defendant/appellant." II. "The trial court erred in prohibiting the defendant/appellant, Ramin Yazdani–Isfehani, from having an independent psychological evaluation of the parties and of his children."

## II

{¶ 18} In his first assignment of error, the father contends that the trial court erred in determining that it lacked jurisdiction to modify the CPO to permit him to exercise visitation with the children. He contends that he reasonably relied upon the magistrate's oral and written representations that the court would revisit the visitation issue after the court-appointed GAL had the opportunity to investigate and file a written report with the court. Moreover, he asserts that public policy mandates that the court maintain continuing jurisdiction over custody and visitation matters in the context of a CPO proceeding in order to uphold the state's fundamental interest in children's welfare.

{¶ 19} The father contends that even after the court issued the CPO, the court and the parties utilized the CPO case as if it were a divorce case. He asserts that because the same magistrate and judge have handled both cases, the two cases have been "wrapped together" such that the court should have considered the issue of visitation in the context of the divorce case, if the court felt that was the more appropriate case number.

{¶ 20} A court possesses initial authority to determine its own jurisdiction over the parties and the subject matter absent a patent and unambiguous lack of jurisdiction. *State ex rel. Enyart v. O'Neill* (1995), 71 Ohio St.3d 655, 646 N.E.2d 1110. The existence of the trial court's subject-matter jurisdiction is a question of law that we review de novo. *State v. Moore,* Highland App. No. 03CA18, 2004-Ohio-3977, 2004 WL 1689674, at ¶ 8, citing *Burns v. Daily* (1996), 114 Ohio App.3d 693, 701, 683 N.E.2d 1164. Therefore, we grant no deference to the conclusion reached below. Id.

{¶ 21} R.C. 3113.31 governs the petition for and issuance of domestic-violence CPOs. It provides that the domestic-relations division of the court of common pleas in counties that have a domestic-relations division, and the court of common pleas in counties that do not have a domestic-relations division, have jurisdiction over domestic-violence CPO proceedings. R.C. 3113.31(A)(2) & (B). The statute provides a mechanism for the issuance of ex parte orders, pending a full hearing, where, after conducting an ex parte hearing, the court finds that temporary

orders are necessary to protect the family or household member from the immediate and present danger of domestic violence. R.C. 3113.31(D)(1).

{¶ 22} After both ex parte and full hearings, R.C. 3113.31 permits, but does not require, a court to "[t]emporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights" in order to stop domestic violence against family or household members. R.C. 3113.31(E)(1)(d).

{¶ 23} The statute contemplates that the court's orders allocating parental rights and responsibilities in the context of a CPO are temporary. The statute explicitly provides for the termination of those temporary orders "on the date that a court in an action for divorce, dissolution of marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children." R.C. 3113.31(E)(3)(b). Thus, while the statute permits a court to issue temporary orders allocating parental rights and responsibilities in order to stop domestic violence, it does not vest the court with authority to modify the allocation of parental rights and responsibilities in the CPO proceeding. *Signer v. Signer*, Cuyahoga App. No. 85666, 2006-Ohio-3580, 2006 WL 1918115, at ¶ 19. Instead, the only modification of those orders expressly contemplated by the General Assembly is in the context of a separate divorce, dissolution, legal separation, or juvenile court proceeding.

{¶ 24} Moreover, we note that R.C. 3113.31(G) provides: "An order issued under this section, other than an ex parte order, that grants a protection order or approves a consent agreement, or that refuses to grant a protection order or approve a consent agreement, is a final, appealable order." Thus, pursuant to the statute, the full-hearing CPO that the trial court issued on November 23, 2004, was a final appealable order.

{¶ 25} A court may grant a party relief from a final judgment under certain circumstances, enumerated in Civ.R. 60, including, but not limited to, mistake, inadvertence, excusable neglect, newly discovered evidence, and fraud. Here, however, the father merely filed a motion in the CPO proceeding requesting the court to grant him visitation with the parties' children. In the absence of any statutory grant of continuing jurisdiction that would permit the modification of the allocation of parental rights and responsibilities once a CPO has issued, and in light of the General Assembly's express intention that a domestic court have the authority to modify such orders in the context of a later divorce, dissolution, or legal separation proceeding, we find that the trial court properly found that it

lacked the requisite jurisdiction to modify visitation in the context of the CPO proceeding.

{¶ 26} Despite this lack of jurisdiction in the context of the CPO proceeding, the father contends that the trial court should have considered his motion for visitation, filed in the CPO case, in the context of the related divorce proceedings, where the court clearly possessed the requisite jurisdiction to decide that issue. The father contends that he did not object to the magistrate's decision, which recommended that the trial court issue a CPO, because in that decision and orally at the hearing, the magistrate expressed an intention to revisit the issue of visitation after the GAL completed her investigation and filed a written report. Likewise, he notes that the November 23, 2004 CPO expresses the court's intention to revisit the visitation order pending the outcome of the GAL's investigation and further hearing.

{¶ 27} The father notes that he has had no contact with any of the children since the court issued the ex parte CPO on October 13, 2004. He filed his motion for visitation on March 10, 2005. The magistrate conducted a hearing upon that motion on May 6, 2005, and issued a magistrate's decision regarding that motion on May 20, 2005. The trial court had not adopted the magistrate's decision when the father filed untimely objections to the magistrate's decision on July 27, 2005. However, the trial court did not rule upon the father's objections or otherwise adopt the magistrate's decision until February 1, 2006, more than eight months after the magistrate issued her decision.[2]

{¶ 28} The father does not suggest exactly how the court should have proceeded to consider his motion, filed in the CPO proceeding, in the separate divorce proceeding. However, he contends that the trial court acted arbitrarily and capriciously by refusing to consider his motion for visitation in the context of the divorce proceeding because (1) he has had no contact with his children throughout the proceedings, (2) the same magistrate and judge are assigned to both the CPO and divorce proceedings, (3) the magistrate conducted a three-hour hearing upon his motion for visitation, and (4) the trial court took an inordinate amount of time to rule upon the magistrate's decision.

{¶ 29} We note that pursuant to Civ.R. 42(A), a court possesses the discretionary power to sua sponte consolidate actions involving a common question of law or fact. We will not reverse a trial court's refusal to exercise powers committed to its sound discretion absent an abuse of that discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the

---

2. The trial court, having not yet adopted the magistrate's decision, exercised its discretion to consider the father's untimely objections sua sponte. See *Baker v. Baker* (1990), 68 Ohio App.3d 402, 405, 588 N.E.2d 944.

court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 30} In the past, this court has declined to find that a court abused its discretion by failing to consolidate cases sua sponte, when the complaining party failed to move the court for an order of consolidation. See *Houser v. Anders* (May 22, 1979), Ross App. No. 682, 1979 WL 206813. Here, however, we conclude that the trial court abused its discretion by failing to sua sponte consolidate the divorce and CPO actions and exercise its jurisdiction in the context of the divorce proceeding to rule upon the father's motion for visitation because (1) a parent has a fundamental liberty interest in the care, custody, and management of his or her child, *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, (2) both the magistrate and trial court erroneously led the father to believe that they would reconsider the issue of visitation in the context of the CPO proceedings, and (3) the father's motion for visitation was pending for nearly one year in the CPO proceeding before the court gave the father any indication that it lacked jurisdiction to consider his request for visitation in that proceeding. Accordingly, we sustain the father's first assignment of error, reverse the trial court's judgment, and remand this cause for further proceedings consistent with this decision. We expressly decline the father's invitation to render a judgment in his favor ordering immediate visitation. Because the trial court did not consider this question below, it would be improper for this reviewing court to usurp the trial court's role by proceeding on the merits of this question. See, e.g., *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138; *State v. Cookson* (Sept. 25, 2001), Washington App. No. 00CA53, 2001 WL 1155710.

### III

{¶ 31} In his second assignment of error, the father contends that the trial court erred by denying him the opportunity to obtain an independent psychological evaluation of the parties and their children. He asserts that the court's decision inhibits his ability to present evidence in support of his case.

{¶ 32} As a preliminary matter, we must first determine whether the order the father appeals is a final appealable order. If an order is not final and appealable, then we have no jurisdiction to review the matter and must dismiss it. See *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 20, 540 N.E.2d 266. In the event that the parties to the appeal do not raise this jurisdictional issue, we must raise it sua sponte. See *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus; *Whitaker–Merrell v. Geupel Co.* (1972), 29 Ohio St.2d 184, 186, 58 O.O.2d 399, 280 N.E.2d 922.

{¶ 33} Section 3(B)(2), Article IV of the Ohio Constitution provides that courts of appeal have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." An order made in a special proceeding that affects a substantial right constitutes a final order. R.C. 2505.02(B)(2). Divorce proceedings are "special proceedings" for the purposes of R.C. 2505.02. *State ex rel. Papp v. James* (1994), 69 Ohio St.3d 373, 379, 632 N.E.2d 889; *Davis v. Davis* (July 23, 2001), Jackson App. No. 00CA28, 2001 WL 884090. Because the case at issue originated in a divorce proceeding, the order appealed was made in a special proceeding.

{¶ 34} However, pursuant to R.C. 2505.02(B)(2), an order made in a special proceeding is final only if it affects a substantial right. A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). Moreover, " '[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future.' " *Davis*, at *3, quoting *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 63, 616 N.E.2d 181.

{¶ 35} The psychological well-being of the parties is an important factor in determining the best interest of the children in custody proceedings. Thus, R.C. 3109.04(C) provides: "Prior to trial, the court *may* cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations." (Emphasis added.)

{¶ 36} Similarly, Civ.R. 35(A) states: "When the mental or physical condition * * * of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit himself to a physical or mental examination or to produce for such examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." (Emphasis added.)

{¶ 37} Thus, both R.C. 3109.04(C) and Civ.R. 35(A) place the decision to order an investigation clearly within the trial court's sound discretion. Additionally, we note that neither the statutory provision nor the rule affords the party seeking such an examination the right to select the professional who will conduct the examination. See, also, *Harness v. Harness* (2001), 143 Ohio App.3d

669, 673, 674, 758 N.E.2d 793, citing *S.S. Kresge Co. v. Trester* (1931), 123 Ohio St. 383, 175 N.E. 611. Because we find that the father does not have a right to have the expert of his choice conduct the psychological evaluations, we conclude that the order appealed does not affect a substantial right within the meaning of R.C. 2505.02(A)(1) and therefore is not a final appealable order under R.C. 2505.02(B)(2). Accordingly, we find that this court lacks the requisite jurisdiction to determine the merits of the father's second assignment of error.

## IV

{¶ 38} In conclusion, we sustain the father's first assignment of error, because, although the court did not possess the requisite jurisdiction to modify visitation in the context of the CPO proceeding, under the particular facts of this case, we find that the trial court abused its discretion by failing to sua sponte consolidate the CPO and divorce proceedings and determine the father's motion for visitation in the context of the divorce proceeding. Because we find that the trial court's order denying the father's request for independent psychological evaluations of the parties and their children is not a final appealable order, we conclude that we lack jurisdiction to determine the merits of the father's second assignment of error. Accordingly, we reverse the trial court's judgment in part, affirm it in part, and remand this cause for further proceedings consistent with this decision.

Judgment reversed in part
and affirmed in part,
and cause remanded.

ABELE and MCFARLAND, JJ., concur.