[Cite as *Binkley v. Coleman*, 2010-Ohio-4824.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY


CAMELIA JANE BINKLEY,            CASE NO. 1-10-33

    PLAINTIFF-APPELLEE,

  v.

MICHAEL E. COLEMAN,             **O P I N I O N**

    DEFENDANT-APPELLANT.


**Appeal from Lima Municipal Court**
**Trial Court No. 08CVF05588**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  October 4, 2010**


**APPEARANCES:**

    *William C. Emerick,* **for Appellant**

    *John A. Poppe,* **for Appellee**

**SHAW, J.**

{¶1} Appellant-Defendant, Michael E. Coleman ("Michael") appeals the April 22, 2010 judgment of the Lima Municipal Court adopting the decision of the Magistrate which found that a valid contract for payment existed between Michael and his former wife, Appellee-Plaintiff, Camelia Jane Binkley ("Camelia") and ordered Michael to pay Camelia $9,000.00 pursuant to the contract.

{¶2} The parties were married for nineteen years prior to their divorce in 1984. In the late seventies, the parties moved into a residence located at 1935 Bowman Road in Lima, Ohio, which at the time was owned by Michael's parents, Harold and Mary Coleman. Upon moving into the Bowman Road property, Camelia and Michael paid a "down payment" of $2,000.00 to Michael's parents. According to the testimony at trial, it was the understanding of the parties and Michael's parents that legal title to the Bowman Road property would remain in Michael's parents' name. Michael and Camelia would pay monthly installments of $50.00 to Michael's parents toward the purchase of the residence. The parties agreed to a $27,000.00 purchase price for the Bowman Road property with no interest to be assessed. Michael testified that the agreement with his parents was that once he and Camelia were financially secure enough to obtain a mortgage, they would pay a balloon payment to Michael's parents for the remainder of the purchase price. The parties apparently intended to set up something along the lines

of a land installment contract. However, this agreement was never reduced to writing.

{¶3} Nevertheless, for several years, Michael and Camelia continued to make the monthly installments toward the purchase of the Bowman Road property, which was also the parties' martial residence. In 1984 the parties divorced. Michael retained legal counsel to represent him in the matter. Camelia proceeded pro se. On September 24, 1984, the parties signed a "Separation Agreement and Property Settlement." Absent from the separation agreement was any mention of the parties' rights or financial arrangements regarding the martial home despite language in the separation agreement stating that "[t]his agreement shall be a full and complete settlement of all property rights between the parties." (Separation Agreement and Property Settlement, article VIII). Rather, on the same day that the separation agreement was signed, the parties entered into a private written agreement distinct from the separation agreement purporting to delineate the parties' rights with regard to the martial home. This agreement stated the following:

> **WHEREAS, Michael E. Coleman lives at 1935 Bowman Road, Lima, Ohio and the title to said real estate is in the name of his father and mother, Harold Coleman and Mary Coleman; and**
>
> **WHEREAS, the undersigned Michael E. Coleman agrees that if and when said property at 1935 Bowman Road is sold, that the said Camelia J. Coleman shall receive a minimum of $3,000.00.**

**The formula for determining the amount that the said Camelia J. Coleman shall receive shall be as follows: There shall be deducted the mortgage and/or Land Contract payoff from the sale price and the said Camelia J. Coleman shall receive from the net proceeds one-third, but not less than $3,000.00, up to a maximum of $9,000.00.**

{¶4} Both Michael and Camelia signed this private agreement. Even though this agreement bore the caption from the parties' pending divorce case, it was never filed or otherwise brought to the attention of the divorce court. On October 12, 1984, the parties' "Separation Agreement and Property Settlement" was approved and journalized by the court via its Judgment Entry. After the divorce was finalized, Michael continued to reside in the marital residence.

{¶5} In September of 1985, Michael married his second wife, Linda Coleman. On August 26, 1986, legal title to the Bowman Road property was transferred from Michael's parents to Michael and Linda. Michael testified that he had secured a mortgage in the amount of $23,597.03 to purchase the Bowman Road home from his parents. This mortgage was documented in the closing statement associated with the transaction. However, the contract sales price of the Bowman Road property was not included in the closing statement. Therefore, it is unclear from the record how much of the mortgage proceeds were actually paid to Michael's parents for the "purchase" of the Bowman Road property. Nevertheless, after the transaction, Michael and Linda were the sole owners of the Bowman Road property.

{¶6} In October 10, 1998, Michael entered into a written land contract with his and Camelia's youngest son, Shelby and Shelby's girlfriend, Denise, for the sale of Bowman Road property. The agreement between the parties provided for a purchase price for the Bowman Road property of $45,000.00. Shelby and Denise were to pay monthly installments of $500.00 to Michael and Linda. The taxes and insurance were first paid from the monthly payment and the remaining balance of the payment was then applied to the purchase price of the property. Shelby and Denise continued to make the monthly payments over an eight-year period and were able to pay all but $3,330.00 of the purchase price pursuant to the land contract agreement. At that point, Shelby and Denise stopped making the monthly payments.

{¶7} On November 23, 2007, Michael and Linda sent a letter to Shelby and Denise stating their intention to enforce the land contract agreement. The letter stated that Michael and Linda intended to institute foreclosure proceedings if Shelby and Denise failed to pay the remaining $3,330.00 due. Michael testified that Shelby responded to the letter and requested whether he and Denise could sell their interest in the Bowman Road property to a third-party, an individual known as "Hootie" Nichols. Michael further testified that he agreed to the arrangement proposed by Shelby to allow Hootie to buy the property by paying Michael and Linda the remaining $3,330.00 on the land contract. In the summer of 2008, Hootie paid the $3,330.00 due on the existing land contract between Michael and

Shelby.   Upon receiving this payment, Michael released the deed to Hootie effectuating the sale of the Bowman Road property to Hootie.

{¶8}   On December 16, 2008, Camelia filed her complaint in this suit in the Lima Municipal Court alleging that Michael sold the Bowman Road property for $45,000.00.   Camelia argued that pursuant to her private agreement with Michael, executed on September 24, 1984, she was now entitled to $9,000.00 of the net proceeds from Michael's sale of the property.   Michael responded to Camelia's complaint by filing a motion to dismiss asserting that the Municipal Court lacked subject-matter jurisdiction to hear the case.   In his motion to dismiss, Michael argued that the private agreement between Michael and Camilla was ancillary to their divorce, therefore the Domestic Relations Court, not the Municipal Court, retained jurisdiction to determine rights and obligations of the parties under the agreement.

{¶9}   On January 28, 2009, the Municipal Court overruled Michael's motion to dismiss citing R.C. 1901.18(A)(2) which provides that the Municipal Court has jurisdiction "in any action or proceeding at law for the recovery of money, of which the Court of Common Pleas has jurisdiction."   The case then proceeded to trial.   On June 29, 2009, the matter was heard before the Magistrate. Camelia and Michael were the only witnesses presented to testify.   Both of Michael's parents had died a decade earlier.

{¶10} Because almost twenty-five years had passed since they executed the agreement, neither Camelia or Michael could testify with any certainty to why their private agreement with regard to the Bowman Road property was excluded from the divorce decree or to their understanding of the nature and the extent of their specific arrangements concerning the property. However, it was evident that the heart of the parties' dispute was the interpretation of what constituted a "sale" to trigger the payment to Camelia. Specifically, at issue was whether the 1986 transaction with Michael's parents and Michael and Linda constituted a "sale" within the meaning of the agreement. However, the parties' inability to recall their intentions when signing the contract and the unavailability of Michael's parents to testify further obfuscated the issue. At the close of the evidence, the Magistrate ordered the parties to submit their written arguments on July 15, 2009.

{¶11} On August 18, 2009, the Magistrate issued his decision. The Magistrate reiterated that the Municipal Court had jurisdiction to resolve the dispute. The Magistrate then determined that a "sale" within the meaning of the parties' agreement occurred in 1998 when Michael entered into the land contract with Shelby and Denise. Therefore, pursuant to the parties' agreement, the Magistrate ordered Michael to pay Camelia $9,000.00. However, in regards to the fifteen-year statute of limitations applicable to contract actions in Ohio, the Magistrate stated that the agreement "could be treated in all respects as if it were part of the divorce decree and not a separate and distinct arms-length contract

between two fully informed individuals." (Decision, at 4). Thus, the Magistrate concluded that "[t]he contract to pay the Plaintiff is deemed to be, in reality, a Court order, not subject to the [fifteen-year] contract statute of limitations." (*Id.*).

{¶12} On February 26, 2010, Michael filed his objections to the Magistrate's Decision in which he continued to object to the jurisdiction of the Municipal Court to decide this matter. On April 22, 2010, the Municipal Court Judge adopted the Magistrate's Decision overruling Michael's objections.

{¶13} Michael filed this appeal, asserting the following assignments of error.

## ASSIGNMENT OF ERROR I

**THE COURT ERRED IN NOT DISMISSING THE COMPLAINT AS THE LIMA MUNICIPAL COURT LACKS SUBJECT MATTER JURISDICTION**

## ASSIGNMENT OF ERROR II

**THE COURT ERRED BY FINDING AN ENFORCEABLE CONTRACT EXISTED BETWEEN THE PARTIES**

## ASSIGNMENT OF ERROR III

**THE COURT ERRED IN ITS INTERPRETATION OF THE AGREEMENT**

## ASSIGNMENT OF ERROR IV

**THE COURT ERRED BY FINDING THAT THE STATUTE OF LIMITATION *[SIC]* DID NOT BAR PLAINTIFF'S RECOVERY**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED IN NOT FINDING THAT THE DOCTRINE OF LACHES BARRED PLAINTIFF'S RECOVERY**

*First Assignment of Error*

{¶14} In his first assignment of error, Michael argues that the Lima Municipal Court did not have subject-matter jurisdiction to decide this case. Specifically, Michael argues that the parties' dispute is a domestic relations matter stemming from the parties' divorce and as such, the matter is within the exclusive province of the Domestic Relations Court.

{¶15} "The existence of the trial court's subject-matter jurisdiction is a question of law that we review de novo." *Yazdani-Isfehani v. Yazdani-Isfehani,* 170 Ohio App.3d 1, 2006-Ohio-7105, at ¶ 20. "Subject-matter jurisdiction is defined as a court's power to hear and decide cases." *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 1998-Ohio-275, 701 N.E.2d 1002.

{¶16} "As a statutorily created court, Ohio municipal courts can exercise only such powers as statutes confer upon them." *Cheap Escape Co., Inc. v. Haddox, LLC*, Franklin App. No. 06AP-1107, 2007-Ohio-4410, at ¶ 13, citing R.C.1901.01; *State v. Bellefontaine Mun. Court* (1967), 12 Ohio St.2d 26, 27. Section 1901.18 of the Revised Code sets forth the subject matter jurisdiction of municipal courts. Specifically, R.C. 1901.18(A)(2) provides, municipal courts have original jurisdiction "[i]n any action or proceeding at law for the recovery of

money or personal property of which the court of common pleas has jurisdiction.'
In addition, R.C. 1901.18(A)(3) further states that municipal courts have original
jurisdiction "[i]n any action at law based on contract, to determine, preserve, and
enforce all legal and equitable rights involved in the contract, * * * and to hear and
determine all legal and equitable remedies necessary or proper for a complete
determination of the rights of the parties to the contract."

{¶17} The Domestic Relations Court has full equitable powers and
jurisdiction appropriate to the determination of all domestic relations matters.
R.C. 3105.011. In general, the Domestic Relations Court has jurisdiction to divide
or disburse the property of the parties' only at the time of the divorce and not
thereafter. R.C. 3105.171(I). However, the Domestic Relations Court retains the
power to enforce the provisions of a divorce decree or to modify an order to carry
into effect the manifest intentions of the parties. R.C. 3105.89. Moreover, where
it is apparent that parties did not disclose the full extent of marital property, the
court may modify the decree to provide for a fair and complete disposition of the
newly disclosed property. *See Schroeder v. Schroeder* (1988), 52 Ohio App.3d
117, 557 N.E.2d 145.

{¶18} It is clear that the parties presented to the Domestic Relations Court
an executed separation agreement clearly stating that "[t]his agreement shall be a
full and complete settlement of all property rights between the parties." However,
it is also clear that the parties contemporaneously signed a separate and private

agreement purporting to settle their rights and interests in the only marital home of the parties. Moreover, this ancillary agreement was never filed with the Domestic Relations Court or otherwise disclosed to the Domestic Relations Court despite the parties' representations to the Domestic Relations Court that their separation agreement settled and disposed of all the property rights between the parties.

{¶19} However, in the instant case, given the non-written form of the purported "land contract" arrangement and the potential application of the Statute of Frauds, it is not clear what, if any, interests, equitable or otherwise, the parties may have had in the Bowman Road property. Moreover, it is unclear from the record why the parties chose—whether it be by omission or design—to exclude from the divorce decree any mention of what they apparently regarded as their equitable ownership rights in the marital home and what they clearly regarded as legal obligations to one another stemming from their private arrangement concerning the property.

{¶20} In these circumstances, we believe that it was within the province of the Domestic Relations Court to make the necessary determinations with regard to the parties' rights or equitable interests, if any, in the marital residence at the time of the divorce. We further find it troublesome that something that the parties themselves obviously regarded as important enough to memorialize in a separate written agreement regarding their respective rights in the marital residence, was

apparently intentionally not disclosed to the Domestic Relations Court at the time of the divorce.

{¶21} Notwithstanding the parties' apparent understanding that they were embarked upon a valid land installment contract, the Domestic Relation Court may have determined that the parties were actually doing no more than paying rent on an oral month to month lease for a property owned by Michael's parents, and therefore the parties had no marital real estate interest in the home to be divided. On the other hand, in view of what was apparently a substantial period of financial performance by the parties, the Domestic Relations Court may have determined that recognition of some equitable interests in the property was appropriate, notwithstanding the Statute of Frauds.

{¶22} In either event, we believe that these issues were within the prerogative and jurisdiction of the Domestic Relations Court to determine, with full disclosure of the circumstances at the time of the divorce. We further believe that the practice of intentionally withholding from the Domestic Relations Court, the existence of such private or "side" agreements involving matters of this nature between the marital parties, only to attempt to litigate them years later in a municipal court, should be discouraged.

{¶23} It is therefore our conclusion that because this matter was obviously a key component of the parties' terms of the divorce, and thereby essential for a full and fair determination of the divorce, but was never disclosed to the divorce

court, that it is the Domestic Relations Court which now retains jurisdiction of the matter to make the necessary determinations of respective rights between the parties to the divorce.

{¶24} Accordingly, we find that this matter was not properly before the Lima Municipal Court and consequently the complaint should have been dismissed. Therefore, Michael's first assignment of error is sustained. Having found that the Lima Municipal Court did not have subject-matter jurisdiction to decide this matter, Michael's remaining assignments of error are hereby rendered moot and overruled.

{¶25} For all these reasons, the judgment of the Lima Municipal Court is reversed and the cause is to be remanded consistent with this opinion.

*Judgment Reversed and Cause Remanded*

**ROGERS and PRESTON, J.J., concur.**

**/jnc**