**In re K.K.**

[Cite as *In re K.K.*, 179 Ohio App.3d 220, 2008-Ohio-5772.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22678.

Decided Nov. 7, 2008.

Ben Swift, for appellee.

Matthew D. DiCicco, for appellant.

———

FAIN, Judge.

{¶ 1} Angela K., the mother of K.K., appeals from an order overruling her Civ.R. 60(B) motion for relief from judgment, without first holding a hearing. Angela contends that the trial court erred in overruling her motion without a hearing, because the judgment from which she sought relief was predicated exclusively upon her in-court agreement, and she had presented affidavits from herself and a treating psychiatrist to the effect that she had not been mentally competent to enter into the agreement. We agree.

{¶ 2} Angela further contends that the trial court should have granted her motion for relief from judgment, but we conclude that it is premature to determine that issue, since the affidavits she presented did not compel findings in her favor on the issue presented, but merely compelled a hearing on that issue. Accordingly, the order overruling Angela's motion for relief from judgment is reversed, and this cause is remanded for a hearing on the motion for relief from judgment.

I

{¶ 3} K.K. was born in 2002, the daughter of Angela and Brian G., who were not married. Initially, custody of K.K. was awarded to Angela. A subsequent order, with the agreement of both parties, adjusted parenting time to provide for equal time with each parent. In 2006, the parties filed opposing motions, with Brian seeking custody. Various proceedings were held, and various provisions for temporary custody were made during the pendency of the proceedings.

{¶ 4} Ultimately, a hearing was held before a magistrate on December 15, 2006. At that hearing, after the identities of the parties, counsel, and the guardian ad litem for the child were established, the following ensued:

{¶ 5} "THE COURT: Okay. All right. We're here today continued—today was—we were set for trial on this matter. It appears that the parties, however, have reached an agreement with regard to some issues, other issues we're going to set over for a status conference in June. And let me see if I can articulate what that is.

{¶ 6} "If the parties will listen carefully at this time. It is my understanding that the parties have agreed that at this time legal custody of the child will be granted to the father; that mother is to have visitation with the child to be supervised by any family member that is approved by the father as follows: The mother shall have lunch with the child at * * * School three times per week. Also, shall have visitation with the child every Wednesday evening from 5:00 p.m. to 7:30 p.m., and also on Sunday—every Sunday from 10:00 a.m. to 6:00 p.m.

{¶ 7} "Other visitation, overnight visitation, or anything above and beyond what I have just mentioned will be as agreed between the parties, and will also be supervised by—by one or more family members as approved by the father.

{¶ 8} "The matter will be set for a status conference on June 15th of 2007 at 9:00 a.m., at which time the Court will address any additional parenting time issues that have arisen, and also child support issues. Prior to that review, counsel for the mother is to provide a report from Doctor Waite concerning the mother's current mental health status, as well as any progress that she's made, and to provide that to the Court within twenty days prior to the status.

{¶ 9} "Mr. Gump [representing the mother], does that cover everything, as far as you can tell?

{¶ 10} "MR. GUMP: It is, prior to the June 15th hearing.

{¶ 11} "THE COURT: Yes.

{¶ 12} "MR. GUMP: Yes.

{¶ 13} "THE COURT: Okay. And Mr. Swift?

{¶ 14} "MR. SWIFT [representing the father]: That's correct, Your Honor.

{¶ 15} "THE COURT: Okay. And Mr. Southern, is that consistent with your— in view of what is in the child's best interest at this time?

{¶ 16} "MR. SOUTHERN [the guardian ad litem for the child]: Your Honor, at this time I do feel that this arrangement would be in the best interest of the child. However, I would encourage the parties to move towards an expansion of the mother's parenting time with the child, if at all possible, prior to that hearing.

{¶ 17} "The child is very well bonded to both parents. The child speaks highly of both parents. The child loves both parents. From my interaction with the parents, I believe both parents have genuine love and affection for the child.

{¶ 18} "Understanding the—understanding the situation that has led to the hearing today, I would not want to see the contact between the child and particularly the mother in this case to somehow erode or deteriorate their relationship. And as such, I would recommend—I would strongly encourage the

parties to move towards an agreed expansion of said visitation as it is deemed fit, safe and appropriate.

{¶ 19} "THE COURT: Okay. And the Court would certainly concur with that and encourage that, as well. That would be the direction that the Court would want—would certainly want to move in. So, as that—those opportunities present themselves, that's what should—should happen. And that's why the Court is ordering any additional visitation as agreed between the parties. And hopefully that will be something that happens.

{¶ 20} "Okay. [Angela], if you could raise your right hand for me, please. Do you swear or affirm the testimony you are about to give be the truth, the whole truth and nothing but the truth?

{¶ 21} "[ANGELA]: Yes.

{¶ 22} "THE COURT: Okay. And you've heard what I have indicated that is the agreement of the parties. Is that your agreement, ma'am?

{¶ 23} "[ANGELA]: Yeah, I—I will have to probably ask questions again, but yes.

{¶ 24} "THE COURT: Okay. And—

{¶ 25} "MR. GUMP: Let me interrupt.

{¶ 26} "THE COURT: Uh-huh.

{¶ 27} "MR. GUMP: Are there things about what he said that you didn't understand? This is the information I got from you.

{¶ 28} "[ANGELA]: I just want to know when I'm supposed to get my report from Doctor Waite to you.

{¶ 29} "MR. GUMP: Okay. What he said, the sooner the better, because what the Guardian is recommending and what everybody here wants is, because Doctor Hanna suggested in her report that your—your visitation would be supervised until we have a report that indicated stability by a mental health professional. So, the sooner you get the report, I'll get it to the Court, I'll get it to the Magistrate, I'll get it to the Guardian, I'll get it to the lawyer.

{¶ 30} "[ANGELA]: Okay.

{¶ 31} "THE COURT: From Doctor Charlotte—or Christina Waite.

{¶ 32} "[ANGELA]: Yeah, I just didn't understand the twenty day thing.

{¶ 33} "MR. GUMP: He wanted me to make sure that the lawyer and the Guardian and the Court had a report from Doctor Waite twenty days prior to June 15th.

{¶ 34} "[ANGELA]: Okay. But, it can be before then?

{¶ 35} "MR. GUMP: Sure. It would be like May the 20th, if you want to know approximately that date. It would be about the 20th of May. But, it would be any time before that. It's—unlike today, we just got this report from the Guardian, we just got the psych report from Doctor Hanna, because she messed up everybody's name and who the attorneys were. So, we didn't have time to review them long enough with each other before we came in here today.

{¶ 36} "[ANGELA]: Okay. And my mom was never supposed to be on any visitation.

{¶ 37} "MR. GUMP: Well, you corrected that name. It should have been * * *.

{¶ 38} "[ANGELA]: That's not really her name, either. It's * * *, but my mom definitely shouldn't be on there.

{¶ 39} "MR. GUMP: We've changed that.

{¶ 40} "[ANGELA]: Okay.

{¶ 41} "MR. GUMP: And Brian knows that.

{¶ 42} "[BRIAN]: Yes, I completely agree.

{¶ 43} "MR. GUMP: Okay.

{¶ 44} "THE COURT: Okay. [Angela], did you have anything—any other questions regarding—regarding this?

{¶ 45} "[ANGELA]: Not right now, no."

{¶ 46} Whereupon, the magistrate swore in the father, Brian, established his agreement to the proposed order, and the proceedings were adjourned.

{¶ 47} On January 9, 2007, an order was entered awarding legal custody of K.K. to her father, Brian, "[b]y agreement of the parties, the recommendation of the Guardian Ad Litem, and the Court finding it to be in said child's best interest."

{¶ 48} On August 9, 2007, Angela filed a motion for relief from judgment under the authority of Civ.R. 60(B)(1) and (2), alleging that she "did not have the mental capacity to understand the events and actions that took place during the * * * December 15, 2006 hearing." She requested a hearing on her motion, and attached the affidavits of herself and of Christina G. Waite, M.D., her treating psychiatrist.

{¶ 49} In her affidavit, Angela averred, among other things:

{¶ 50} "3. I have little to no personal recollection of the facts, circumstances, actions, and events that took place before the Court on December 15, 2006.

{¶ 51} "4. As of December 15, 2006, I was receiving psychiatric treatment and evaluation, which included, adjusting medications prescribed to me by my primary care physician.

{¶ 52} "5. If I had the capacity to understand the facts, circumstances, actions, and events, taken before the Court on December 15, 2006, I would not have consented to the grant of legal custody of [K.K.] to Brian [G.]."

{¶ 53} Dr. Waite's affidavit included the following averments:

{¶ 54} "7. [Angela's] primary care physician prescribed Topamax (an anticonvulsant) and Seroquel (an atypical antipsychotic medication), both of which were prescribed to stabilize [Angela's] mood.

{¶ 55} "8. Both Topamaz and Seroquel can contribute to severe cognitive difficulties including memory changes, language problems, and a dementia-like process.

{¶ 56} "9. During Angela['s] * * * ongoing treatment with me, I regulated [her] withdrawal from Topamax and Seroquel based upon my hypothesis that those medications contributed to and/or were the cause of [her] cognitive disorder.

{¶ 57} "10. As I took [Angela] off of Topomax and Seroquel, her cognitive disorder reversed rather dramatically. Additionally, [Angela's] condition actually improved radically without medications, and then further improved with appropriate treatment.

{¶ 58} "11. It is my professional opinion, to a reasonable degree of medical probability, that Angela * * * suffers from attention deficit disorder and post traumatic stress disorder.

{¶ 59} "12. It is my professional opinion, to a reasonable degree of medical probability, that Angela['s] * * * cognitive disorder was the result of her treatment with Topamax and Seroquel.

{¶ 60} "13. It is my professional opinion, to a reasonable degree of medical probability, that Angela * * * was mentally incompetent during the times she was experiencing the cognitive disorder, including December 15, 2006.

{¶ 61} "14. It is my professional opinion, to a reasonable degree of medical probability, that Angela * * * did not possess the mental capacity to understand the facts, circumstances, events, and actions taken during the December 15, 2006 Court hearing."

{¶ 62} Dr. Waite's affidavit referred to, and attached, a letter from her opining that Angela's recovery from the cognitive difficulties induced by inappropriate medications had proceeded to the point that by the beginning of the school year 2007 she was able to parent her child appropriately.

{¶ 63} The magistrate issued a decision denying Angela's motion for relief from judgment, without first holding a hearing. Angela objected, but her objection was overruled, and the trial court adopted the decision as its order. Angela appeals from the order denying her motion for relief from judgment.

## II

{¶ 64} Angela's first assignment of error is as follows:

{¶ 65} "The trial court erred in denying [Angela's] motion for relief from judgment without a hearing."

{¶ 66} A judgment may be predicated upon the agreement of the parties, but an agreed judgment depends, for its efficacy, upon the capacity of the parties to enter into the agreement. *Sovak v. Spivey*, 155 Ohio App.3d 479, 2003-Ohio-6717, 801 N.E.2d 896, ¶ 26.

{¶ 67} The issue whether a party was competent at the time of entering into an agreed entry may be raised by a motion for relief from judgment. *Bretzfelder v. Bretzfelder*, Summit App. No. 23674, 2008-Ohio-2669, 2008 WL 2267039, ¶ 6.

{¶ 68} The affidavits of Angela and her treating psychiatrist, Dr. Waite, raised the issue whether Angela was competent when she entered into the agreement regarding K.K.'s custody and visitation, upon which the court's order depended.

{¶ 69} Brian contends that Angela has failed to establish that she has a meritorious defense or claim to present if relief is granted, normally a requirement for a relief under Civ.R. 60(B). It is questionable whether this requirement applies to issues involving child custody and visitation, which are analyzed not in terms of claims and defenses of the parents, but in terms of the best interests of the child. In any event, we are satisfied that Angela has demonstrated a potentially meritorious position on the issue of child custody and visitation, based upon Dr. Waite's report that Angela's cognitive difficulties, which seem to have been the basis for Brian's motion, had abated by early 2007 to the extent that she would have had no difficulty in parenting K.K.

{¶ 70} Angela's first assignment of error is sustained. The trial court should have held a hearing on the issue whether Angela was competent to have entered into the in-court agreement concerning custody and visitation that served as the basis for the order of January 9, 2007.

## III

{¶ 71} Angela's second assignment of error is as follows:

{¶ 72} "The trial court committed an abuse of discretion when it denied [Angela's] motion for relief from judgment."

{¶ 73} In this assignment of error, Angela appears to be arguing not merely that she should have had a hearing on her motion for relief from judgment, but that the trial court should have granted her motion, even without a hearing. We conclude that it would have been premature for the trial court to have granted the motion without a hearing. Although the trial court was presented with affidavits from Angela and her treating psychiatrist to the effect that she was incompetent to have entered into the in-court agreement, it was not required to accept those averments as true. At a hearing, after cross-examination, and any rebuttal evidence, the trial court may determine whether Angela was, in fact, incompetent when she entered into the in-court agreement.

{¶ 74} Angela's second assignment of error is overruled.

IV

{¶ 75} Angela's first assignment of error having been sustained, and her second assignment of error having been overruled, the order of the trial court from which this appeal is taken is reversed, and this cause is remanded for further proceedings, consistent with this opinion, which should include a hearing on Angela's motion for relief from judgment.

Judgment accordingly.

WOLFF, P.J., and WALTERS, J., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of appeals, sitting by assignment.