[Cite as *In re J.M. v. A.M.*, 2022-Ohio-1092.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: J.M., | : | |
| Petitioner-Appellee, | : | |
| | : | No. 19AP-832 |
| v. | : | (C.P.C. No. 16DR-3832) |
| A.M., | : | (REGULAR CALENDAR) |
| Petitioner-Appellant. | : | |

D E C I S I O N

Rendered on March 31, 2022

**On brief:** *Sowald Sowald Anderson & Hawley*, and *Marty Anderson*, for appellee. **Argued:** *Marty Anderson*.

**On brief:** *The Behal Law Group LLC*, *Robert J. Behal,* and *DeAnna J. Duvall*, for appellant. **Argued:** *Robert J. Behal.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

KLATT, J.

{¶ 1} Petitioner-appellant, A.M., appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted petitioner-appellee, J.M., relief from the judgment dissolving the parties' marriage. For the following reasons, we reverse the trial court's judgment.

{¶ 2} The parties started dating in high school, and they married on August 13, 1988. During the marriage, the parties had two children: a son born in 1992 and a daughter born in 1995.

{¶ 3}   J.M. worked as a physical therapist throughout most of the marriage. Initially, A.M. worked in the plumbing and pipefitting field.  In 2000, A.M. founded Capital City Mechanical, Inc., a mechanical contracting business that he continues to operate today.

{¶ 4}   According to J.M., beginning around 2012, the stresses in her life began to accumulate.  Her son was hospitalized repeatedly for anxiety disorder, A.M.'s aunt and father were ill, and then A.M.'s father passed away.  J.M. further explained:

> [Capital City Mechanical] was growing rapidly.  My mom had had back surgery.  I would take care of her and work at the same time.
>
> * * *
>
> I coached volleyball.  Then my mom came home [from Florida] in the spring of 2015 and her health started to deteriorate.  At the same time my dad was having issues, and he had to have an unexpected heart surgery.  He passed away unexpectedly as a result of that surgery.
>
> * * *
>
> And then my mom was having difficulty caring for herself.  We had to take care of getting rid of a condo in Florida.  My mom's health would go up and down.  * * * [M]y mom would at times have 10 to 12 doctors' appointments a week.  I would be taking her to that, working, [and] trying to keep up on our residence because [A.M.] was never home.

(Tr. at 46-47.)

{¶ 5}   Additionally, at some point in 2013, J.M. began to suspect that A.M. was having an extramarital affair.  J.M. started driving around at night looking for A.M.  With all the demands and stresses on her, J.M. coped by drinking alcohol.

{¶ 6}   A.M. admitted to J.M. that he was having an affair with J.F. sometime in June or July of 2015.  According to A.M., J.M. was engaging in extramarital relationships by this time, but J.M. denies this.

{¶ 7}   In August 2015, on a vacation to celebrate their anniversary, A.M. asked J.M. if they could "have it both ways," meaning "[h]e could do what he wanted to on the weekends and occasionally go away on trips with who he wanted to, and [she] could do the same." *Id.* at 55.  By her recollection, J.M. was upset and bewildered by this request for an

open relationship. However, when the parties returned to Ohio, J.M. sought out J.F. because she found out that A.M. and J.F. "were considering including someone else in their relationship." *Id.* at 295. J.M. initiated an intimate relationship with J.F. that eventually included A.M. J.M. claimed that she entered into this relationship "to save [her] marriage" and it did not last long. *Id.* at 56.

{¶ 8} The parties disagree on the circumstances that led to the creation of their separation agreement. According to J.M., in early spring 2016, A.M. told her, "in order * * * to work on [their] marriage, he had to know that [Capital City Mechanical] would be secure and that it would be able to run itself so that [they] could take the time away from the company to get things together and [ ] work on [their] marriage so that [they] could save it." *Id.* at 59. Consequently, A.M. "needed to get something on paper that would allow him to know that the company could be secure." *Id.* A.M. then asked J.M. to "write stuff down" and "divide things out." *Id.* at 59, 141. A.M. also suggested that they contact Steve Miller, an attorney, because friends of theirs had obtained his assistance when undergoing a dissolution.

{¶ 9} According to A.M., during an argument between the parties, J.M. brought up a mutual friend who had gotten a dissolution. J.M. asked A.M. what attorney the friend had used for the dissolution. A.M. answered, "Steve Miller," and J.M. said, "Well, call Steve Miller on Monday." *Id.* at 513. A.M. did.

{¶ 10} A.M. and J.M. first met with Miller at Memories, a bar and restaurant located in Grove City, on April 12, 2016. During that meeting, which lasted approximately one hour, J.M. drank three to five beers. Miller asked the parties to provide him a list of marital assets and liabilities, and to designate on the list which spouse was to receive which asset and liability. After the meeting, the parties created such a list, which A.M. provided to Miller. Miller used the list to draft a separation agreement. A.M. and J.M. then negotiated further, and A.M. provided Miller with another list of terms to incorporate into the separation agreement. On June 22, 2016, Miller emailed A.M. a newly revised draft of the separation agreement in red-line form. A.M. gave J.M. a copy of this draft agreement, entitled "PROPERTY SETTLEMENT AND SEPARATION AGREEMENT." (J.M.'s Ex. 24.) A.M. called Miller with only one change to the agreement.

{¶ 11}    A.M. and J.M. met with Miller at Memories again on June 24, 2016. Miller had with him a final version of the separation agreement. According to J.M., upon reviewing the document, she saw for the first time the words "Separation Agreement." J.M. "was just floored because that [was] not what [she] thought [they] were doing," and she began to cry. (Tr. at 73.) According to J.M., she was "[j]ittery, nervous, crying, [and] just beside [her]self" throughout the meeting. *Id.* at 75. By her own account, J.M. also drank three to five beers over the course of the two- to two-and-one-half-hour meeting.

{¶ 12} During the meeting, Miller went through the separation agreement, explaining it to A.M. and J.M. While Miller reviewed the agreement, J.M. noticed a few mistakes, which Miller corrected. The parties initialed Miller's handwritten corrections and executed the separation agreement.

{¶ 13} Miller explained to the parties that they had entered into a binding agreement, but they did not necessarily need to proceed with a dissolution of their marriage. J.M. understood that Miller was going to "hold on" to the separation agreement. *Id.* at 207. If she or A.M. wanted a dissolution, Miller would file the agreement, along with additional paperwork, with the trial court.

{¶ 14} At some point during the meeting, J.M. excused herself to visit the restroom. While returning from the restroom, J.M. stopped by the table of a friend, P.C. J.M. told P.C., "We are here for our divorce. We are trying to get it straightened out, and this is the attorney." *Id.* at 10.

{¶ 15} On July 8, 2016, J.M. emailed Miller, stating, "I would like to move forward with the agreement and from the conversation on Friday, June 24th, I gather that means you have to proceed in the legal manner you set forth." (A.M.'s Ex. D.) J.M. followed up that email with a second email dated July 25, 2016, stating, "Please move forward with the dissolution please." (A.M.'s Ex. G.)

{¶ 16} According to J.M., she asked Miller to proceed with the dissolution because of the escalating discord and violence between her and A.M. In one fight between the parties, J.M. jumped into A.M.'s truck as A.M. was pulling away and the two tussled as A.M. drove on the freeway. Additionally, during this time, J.M. was drinking so much that she was blacking out.

{¶ 17} Even though she asked for the dissolution, J.M. contends that what she really wanted was for A.M. "to give [her] a lifeline" and "come back and save [their] marriage together." (Tr. at 300.) In J.M.'s own words, she "was spiraling out of control. [She] was drinking a lot. [She] just needed somebody to help [her]. [She] had no family that knew anything that was going on. [She] had wrecked her truck. * * * [She] was desperate, desperate at that point for [A.M.] to save [her]." *Id.* at 301.

{¶ 18} On October 10, 2016, the parties filed a joint petition for dissolution. The trial court held a hearing on the parties' petition on November 17, 2016. Both J.M. and A.M. attended that hearing and gave sworn testimony. On November 18, 2016, the trial court issued a decree of dissolution that incorporated the parties' separation agreement. According to that decree, both parties testified at the November 17, 2016 hearing that they "voluntarily entered into the Separation Agreement and agreed to the terms contained therein and each Petitioner is satisfied with the terms thereof[,] [and] that each Petitioner voluntarily sought dissolution of their marriage and desires to have the marriage dissolved." (Nov. 18, 2016 Decree of Dissolution of Marriage.)

{¶ 19} On October 26, 2017, J.M. filed a Civ.R. 60(B) motion for relief from the November 18, 2016 judgment. The trial court held a hearing on the motion. J.M., A.M., and Miller testified at the hearing. In a judgment dated November 12, 2019, the trial court granted J.M.'s motion.[1]

{¶ 20} A.M. now appeals the November 12, 2019 judgment, and he assigns the following error:

> The trial court erred to the prejudice of Appellant-Husband and abused its discretion in granting relief from judgment pursuant to Civ.R. 60(B) against the manifest weight of the evidence.

{¶ 21} Pursuant to Civ.R. 60(B), a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect;

---

[1] In reciting the facts, we have excluded any evidence offered at the hearing that the trial court found not credible in its decision granting J.M. relief from judgment. Consequently, we do not discuss J.C.'s testimony or Miller's testimony regarding J.M.'s demeanor during the June 24, 2016 meeting.

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1) through (5). To prevail on a Civ.R. 60(B) motion, a party must demonstrate that: (1) it has a meritorious claim or defense to present if the court grants it relief; (2) it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) it filed the motion within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it filed the motion not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. If the moving party fails to demonstrate any of these three requirements, the trial court should overrule the motion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). A trial court exercises its discretion when ruling on a Civ.R. 60(B) motion, and, thus, an appellate court will not disturb such a ruling absent an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

{¶ 22} In the case at bar, J.M. never articulated which particular Civ.R. 60(B)(1) through (5) ground or grounds on which she sought relief from judgment. Likewise, the trial court did not identify which particular Civ.R. 60(B)(1) through (5) ground or grounds on which it granted relief from judgment. We base our review, therefore, on the trial court's general description of the three bases for relief the trial court considered in its decision: (1) A.M. did not fully and accurately disclose the value of Capital City Mechanical, (2) the parties failed to immediately separate after entering into the separation agreement on June 24, 2016, and (3) J.M. lacked the capacity to execute the separation agreement and

decree of dissolution. We will correlate these bases with a specific Civ.R. 60(B) ground for relief to determine whether the trial court erred in granting relief on each basis.

{¶ 23} Initially, we are mindful that "[a] court must be diligent in its analysis when a party seeks relief from a dissolution of marriage." *McLoughlin v. McLoughlin*, 10th Dist. No. 05AP-621, 2006-Ohio-1530, ¶ 24. "[M]utual consent is the cornerstone of [ ] dissolution law." *Knapp v. Knapp*, 24 Ohio St.3d 141, 144 (1986). To obtain a dissolution, spouses must jointly petition the court and attach to their petition a separation agreement executed by both spouses. R.C. 3105.63(A). Both spouses must appear before the court and verify that they voluntarily agreed to the separation agreement, they are satisfied with its terms, and they seek dissolution of the marriage. R.C. 3105.64(A). If either spouse becomes dissatisfied with the separation agreement, the court must dismiss the petition for dissolution and refuse to validate the proposed separation agreement. R.C. 3105.65(A).

{¶ 24} Consequently, when seeking relief from a dissolution, the moving party is essentially asking the court for a release from the party's own promise. *McLoughlin* at ¶ 24. "Courts must be wary and ensure that relief under Civ.R. 60(B) is justified, not merely a tool used 'to circumvent the terms of a [separation] agreement simply because, with hindsight, [the moving party] has thought better of the agreement which was entered into voluntarily and deliberately.' " *Id.*, quoting *Biscardi v. Biscardi*, 133 Ohio App.3d 288, 292 (7th Dist.1999).

{¶ 25} As we stated above, the trial court first granted J.M. relief from judgment because A.M. failed to determine and report to J.M. the value of Capital City Mechanical, the business A.M. founded during the marriage. Capital City Mechanical is a corporation, so the asset at issue is not the business itself, but shares of stock in the business. We conclude the trial court erred in granting relief from judgment on the basis that no valuation of the Capital City Mechanical stock occurred.

{¶ 26} Pursuant to former Loc.R. 17 of the Franklin County Court of Common Pleas, Division of Domestic Relations, "[u]pon the filing of a petition for dissolution, each spouse so filing * * * shall file an affidavit of property * * *, together with any other relevant information concerning such listing that is within their knowledge."² The complete

---

² In amendments effective May 13, 2019, the trial court expanded Loc.R. 17. The portion of Loc.R. 17 relevant to this case remained substantively unchanged, although it is now specifically designated Loc.R. 17(C).

omission of an asset from the affidavit required under Loc.R. 17 may be grounds for setting aside a decree of dissolution under Civ.R. 60(B)(5). *Lewis v. Lewis*, 10th Dist. No. 09AP-594, 2010-Ohio-1072, ¶ 19; *McLoughlin* at ¶ 30. Likewise, "when a separation agreement omits assets that are substantial in relative amount and material to an informed and deliberate agreement about an equitable division of the property," a court may grant relief from judgment under Civ.R. 60(B)(5). *In re Murphy*, 10 Ohio App.3d 134, 137 (1st Dist.1983).

{¶ 27} Omission of an asset warrants relief from a dissolution decree because both parties must consent and agree to the terms of the separation agreement. The separation agreement must provide for a division of all property. R.C. 3105.63(A)(1). If a substantial and material asset is omitted, then consent or mutual agreement to an equitable division of property cannot exist, precluding an agreement upon which the dissolution decree can be based. *In re Whitman*, 81 Ohio St.3d 239, 241 (1998); *Murphy* at 137. "This lack of mutuality undermines the integrity of the dissolution proceeding and may constitute sufficient grounds to set aside the decree under Civ.R. 60(B)." *Whitman* at 241.

{¶ 28} Here, neither the settlement agreement nor A.M.'s Loc.R. 17 affidavit of property omitted the Capital City Mechanical stock. The settlement agreement addressed A.M.'s shares in Capital City Mechanical, stating, "Husband shall retain as his own separate property, free and clear of any claim of Wife, his entire interest in Capital City Mechanical, Inc., an Ohio corporation (the "Business"), which equals 100% [of] all issued and outstanding shares of the Business, as well as all distributions and income earned." (Property Settlement and Separation Agreement at Art. VII, Sec. 1.) Moreover, A.M.'s Loc.R. 17 affidavit of property lists "Capital City Mechanical, Inc." under "Closely Held Stocks & Other Business Interests." (A.M.'s Aff. of Property at Sec. II, Subsec. E.)

{¶ 29} Instead of complaining that A.M. omitted the Capital City Mechanical stock from the Loc.R. 17 affidavit or separation agreement, J.M. asserts that A.M. failed to assign a value to his shares of stock. A.M.'s Loc.R. 17 affidavit of property only indicates that the value of the stock is "[u]nknown." (A.M.'s Aff. of Property at Sec. II, Subsec. E.) Based on the failure to obtain and disclose a valuation, J.M. argues she is entitled relief from judgment.

{¶ 30} We considered this exact argument in *McLoughlin*, 10th Dist. No. 05AP-621, 2006-Ohio-1530. There, the marital assets included the husband's retirement account with the Ohio Employees Retirement System ("OPERS"). In their separation agreement, the parties agreed to divide the value of the contributions made to the OPERS account during the marriage. *Id.* at ¶ 5. The husband's Loc.R. 17 affidavit included the OPERS account, but the affidavit did not disclose the value of the account. *Id.*

{¶ 31} After the trial court issued a decree of dissolution, the wife filed a motion for relief from judgment pursuant to Civ.R. 60(B). In her motion, the wife argued that the trial court should set aside the decree of dissolution because the husband had failed to disclose the value of his OPERS account. *Id.* at ¶ 8. The trial court denied the wife relief from judgment. *Id.* at ¶ 12.

{¶ 32} On appeal, the wife argued that the trial court erred by ignoring the binding precedent of *Hobbs v. Hobbs*, 10th Dist. No. 91AP-1478 (June 11, 1992); *Kelly v. Nelson*, 10th Dist. No. 92AP-1014 (Dec. 29, 1992); and *In re Wood*, 10th Dist. No. 97APE01-77 (Aug. 12, 1997). We began our analysis with a review of the facts and holdings of *Hobbs* and *Kelly*. In *Hobbs*, we affirmed a judgment setting aside a dissolution where the husband failed to disclose ownership of 50 percent of nonvoting stock in 5 companies. *McLoughlin* at ¶ 26. In *Kelly*, we found the trial court did not err in granting relief from judgment under Civ.R. 60(B)(5) where the husband omitted the insurance agency he owned from the parties' separation agreement. *McLoughlin* at ¶ 27. After summarizing those two cases in *McLoughlin*, we concluded that in *Hobbs* and *Kelly*, we had "affirmed the trial courts' decisions to vacate based on one party's complete failure to identify an asset in [an] affidavit and [separation] agreement, thus vitiating the concept of mutuality underlying dissolution." *McLoughlin* at ¶ 29.

{¶ 33} Our analysis of *Wood*, however, required consideration of a complicating factor. In *Wood*, we had stated, "[f]ull disclosure in dissolution proceedings means disclosure of all assets, *as well as disclosure of the value of the assets*." (Emphasis added.) In *McLoughlin*, we considered that statement in the context of the facts of *Wood*. There, the asset at issue was the husband's retirement account. The husband had done nothing more than answer "yes" on his Loc.R. 17 form, indicating only that he had retirement assets. No further information was provided, such as the type of retirement account(s) or the name

of the institution servicing the account(s), from which the value of the account(s) could be determined. *McLoughlin* at ¶ 30. The wife, consequently, could not ascertain the value of the assets disclosed. *Id.* Thus, in *Wood*, although the husband had acknowledged the existence of his assets, he had not provided enough identifying information regarding the assets for any sort of valuation. *Id.* The "yes" answer, therefore, was tantamount to an omission of the assets altogether.

**{¶ 34}** Given these facts, we determined in *McLoughlin* that *Wood* did not create an additional requirement that spouses must disclose the value of each asset named in a Loc.R. 17 affidavit or separation agreement. *McLoughlin* at ¶ 30. Rather, we held, *Wood* "stands in line with the holdings of *Hobbs* and *Kelly*: when an asset is completely omitted from the agreement, a party may be entitled to relief from judgment under Loc.R. 17 and Civ.R. 60(B)(5)." *McLoughlin* at ¶ 30.

**{¶ 35}** Based on our holding in *McLoughlin*, we conclude that the failure to determine and report the value of A.M.'s shares of Capital City Mechanical stock does not justify setting aside the dissolution under Civ.R. 60(B)(5). Only the complete omission of an asset from a Loc.R. 17 affidavit or separation agreement may render a dissolution vulnerable to a Civ.R. 60(B)(5) motion.[3]

**{¶ 36}** Finally, we must address the trial court's contention that real property and subsidiaries owned by Capital City Mechanical are missing from the separation agreement. Because the assets at issue are owned by Capital City Mechanical—an independent corporate entity—they are not A.M.'s or J.M.'s property. As property not belonging to either A.M. or J.M., those assets did not need to be allocated in the settlement agreement. Consequently, the omission of these assets from the separation agreement is not a ground for relief from judgment under Civ.R. 60(B)(5).

**{¶ 37}** Next, we turn to the trial court's second ground for granting J.M. relief from judgment: the parties failed to immediately separate after entering into the separation agreement on June 24, 2016. We conclude that the trial court erred in granting J.M. relief from judgment on that ground.

---

[3] Even if the moving party establishes the omission of an asset, a trial court may decide to deny relief from judgment. *McLoughlin* at ¶ 31. In such circumstances, a trial court must exercise its discretion to determine whether equity demands that the dissolution be set aside. *Id.*

{¶ 38} Pursuant to R.C. 3103.06, "[a] husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." Thus, for a valid separation agreement to exist, the spouses must agree in the separation agreement to an immediate separation. *Kauffman v. Kauffman*, 10th Dist. No. 92AP-28 (Aug. 20, 1992). Here, in the separation agreement, "[e]ach of the parties agree[d] to live separately and apart from the other." (Property Settlement and Separation Agreement, Art. I, Sec. 1.) However, according to J.M., the parties breached that provision, and she sought to set aside the dissolution on that basis.

{¶ 39} We cannot correlate that basis for relief with any Civ.R. 60(B)(1) through (4) ground, so we presume that J.M. invoked Civ.R. 60(B)(5), the "catch-all" provision, as the applicable ground. Civ.R. 60(B)(5) "reflect[s] the inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64 (1983), paragraph one of the syllabus. Courts only grant relief under Civ.R. 60(B)(5) in those extraordinary and unusual cases where the moving party demonstrates substantial reason warranting relief from judgment. *Id.* at paragraph two of the syllabus; *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 22; *Howard v. Howard*, 10th Dist. No. 14AP-292, 2014-Ohio-5248, ¶ 14.

{¶ 40} In the case at bar, J.M. fails to explain why cohabitation after the execution of a separation agreement should qualify as a reason for relief from judgment under Civ.R. 60(B)(5). We recognize that the parties' cohabitation breached the separation agreement, giving J.M. a meritorious defense. However, to constitute a Civ.R. 60(B)(5) ground to set aside a final judgment dissolving a marriage, the reason for relief must be substantial. Cohabitation does not vitiate the parties' consent to the separation agreement, but rather, constitutes a breach of the terms of the separation agreement. Because cohabitation does not affect the existence of mutual consent, "the cornerstone of [ ] dissolution law,"[4] we do not find cohabitation so substantially problematic that it constitutes a ground on which a court may set aside a dissolution of a marriage.

---

[4] *Knapp*, 24 Ohio St.3d at 144.

{¶ 41} The trial court's third reason for granting J.M. relief from judgment was J.M.'s mental incapacity. We conclude that the trial court erred in granting J.M. relief from judgment for that reason.

{¶ 42} Parties entering into a contract must be competent to consent to the terms of that contract. *Davis v. Marshall*, 10th Dist. No. 94APE02-158 (Aug. 9, 1994). "Where there is no capacity to understand these terms, there can be no contract." *Id.* Consequently, a court may set aside a dissolution under Civ.R. 60(B)(5) if the moving party was mentally incompetent when he or she entered into a separation agreement incorporated into a dissolution decree. *Di Pietro v. Di Pietro*, 10 Ohio App.3d 44, 45-46 (10th Dist.1983).

{¶ 43} The test for ascertaining mental competency is whether the person claiming incompetency to contract understood the nature of the transaction and the effects of his or her own actions. *Miller v. Miller*, 7th Dist. No. 05 MA 111, 2006-Ohio-1288, ¶ 11; *In re Wood*, 10th Dist. No. 97APE01-77 (Aug. 12, 1997); *Davis.* "To avoid a contract on grounds of incompetence, 'there must be such weakness or derangement of mental powers as to make the person wholly unable to enter into business transactions which would require him to look after his own interests and deal on equal terms with persons of ordinary intellectual vigor.' " *Pakeeree v. Pakeeree*, 9th Dist. C.A. No. 15186 (Mar. 11, 1992), quoting 55 Ohio Jurisprudence 3d, Incompetent Persons, Section 144, at 586-87 (1984).

{¶ 44} In the case at bar, the trial court found that J.M. misunderstood the nature and quality of the separation agreement when she signed it. The trial court determined that J.M. did not realize she was executing a separation agreement; instead, J.M. believed she was signing a generic financial agreement. The evidence, however, does not support this factual finding. J.M. testified that, initially, she thought she and A.M. were negotiating a financial agreement so A.M. could concentrate on working on their marriage. But, upon seeing the separation agreement on June 24, 2016—the day she signed it—J.M. realized that it was a separation agreement. Indeed, that realization caused her to cry throughout the meeting. Additionally, when returning to her table after visiting the restroom, J.M. told her friend, P.C., that she was at Memories to get matters "straightened out" for her divorce from A.M. (Tr. at 10.) This evidence demonstrates that when J.M. signed the separation agreement, she understood the nature of the transaction she was entering and the effects

of her actions.  Given J.M.'s understanding, her fragile state of mind did not render her mentally incompetent to contract.

{¶ 45}  In addition to finding that J.M. lacked the capacity to execute the separation agreement, the trial court also found that J.M. lacked the capacity to execute the dissolution.  Pursuant to R.C. 3105.65(B), "[i]f, upon review of the testimony of both spouses * * *, the court approves the separation agreement and any amendments to it agreed upon by the parties, it shall grant a decree of dissolution of marriage that incorporates the separation agreement." Consequently, spouses do not execute dissolutions like they execute contracts; rather, courts issue judgments granting dissolutions.

{¶ 46}  Nevertheless, before a court grants a dissolution, both spouses must "appear before the court, and each spouse shall acknowledge under oath that that spouse voluntarily entered into the separation agreement appended to the petition, that that spouse is satisfied with its terms, and that that spouse seeks dissolution of the marriage."  R.C. 3105.64(A).  Thus, the spouses' consent to the dissolution is a necessary prerequisite for the issuance of a decree of dissolution, just like consent is a necessary prerequisite for the formation of a contract.  Therefore, by finding that J.M. lacked the capacity to execute the dissolution, the trial court was determining that J.M. lacked the capacity to express her consent to the dissolution by testifying under oath to the R.C. 3105.64(A) acknowledgements.

{¶ 47}  Our research has uncovered no prior precedent where a court has granted relief from judgment on the ground that a spouse lacked competency to make the acknowledgments required under R.C. 3105.64(A).  This ground does not fit within any of the Civ.R. 60(B)(1) through (4) grounds for relief from judgment.  As we stated above, courts only grant relief under Civ.R. 60(B)(5) in those extraordinary and unusual cases where the moving party demonstrates substantial reason warranting relief from judgment. *Caruso-Ciresi*, 5 Ohio St.3d 64, at paragraph two of the syllabus; *Luke*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, at ¶ 22; *Howard*, 10th Dist. No. 14AP-292, 2014-Ohio-5248, at ¶ 14.

{¶ 48}  The R.C. 3105.64(A) acknowledgements ensure each spouse consents to the dissolution and separation agreement.  Again, as we have repeatedly stated, "mutual consent is the cornerstone of [ ] dissolution law."  *Knapp*, 24 Ohio St.3d at 144.  Based on the importance of each spouse's consent in dissolution proceedings, we conclude that a

spouse's incompetency to testify to the R.C. 3105.64(A) acknowledgements constitutes a ground for relief from judgment under Civ.R. 60(B)(5).

{¶ 49} Under former Evid.R. 601(A), "[e]very person is competent to be a witness except * * * [t]hose of unsound mind * * * who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."[5] Thus, a person of unsound mind may be competent to testify. " 'A person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.' " *State v. Bradley*, 42 Ohio St.3d 136, 140-41 (1989), quoting *State v. Wildman*, 145 Ohio St. 379 (1945), paragraph three of the syllabus.

{¶ 50} Here, J.M. presented evidence that she was experiencing great emotional turmoil at the time of the dissolution hearing. She also drank two large glasses of wine prior to the hearing. The question, therefore, is whether those two factors so impaired her mental acuity that she could not correctly answer when asked whether she had voluntarily entered into the separation agreement, she was satisfied with the terms of the agreement, and she sought dissolution of her marriage.

{¶ 51} J.M. did not testify that she was so mentally incapacitated that she could not understand the questions asked of her and respond intelligibly and truthfully during the dissolution hearing. Obviously, the trial judge overseeing the dissolution hearing perceived nothing in J.M.'s demeanor or responses to make him question her competency because he allowed her to testify and relied on her testimony in making his judgment. This is consistent with the testimony of Miller and A.M., who did not observe any indication that J.M. was mentally impaired.

{¶ 52} Even the trial court, in deciding the Civ.R. 60(B) motion, did not find that J.M.'s mental state prevented her from testifying accurately during the dissolution hearing. The trial court, instead, found that J.M. may not have understood that a dissolution hearing was occurring due to its short, informal nature, and therefore, J.M. may have been unable to assert her rights. This finding rests completely on speculation. J.M. did not testify that

---

[5] We quote and apply the version of Evid.R. 601 in effect when J.M. testified at the November 17, 2016 dissolution hearing.

she mistook the dissolution hearing for any other proceeding.  Moreover, the point of the R.C. 3105.64(A) acknowledgements is to give both spouses the opportunity to object to the separation agreement and dissolution.  Although the record contains no transcript of the parties' dissolution hearing, we know J.M. made each acknowledgement because those acknowledgements are memorialized in the dissolution decree.  The decree states that the parties testified during the November 17, 2016 hearing that they "voluntarily entered into the Separation Agreement and agreed to the terms contained therein and each Petitioner is satisfied with the terms thereof[,] [and] that each Petitioner voluntarily sought dissolution of their marriage and desires to have their marriage dissolved."  (Nov. 18, 2016 Decree of Dissolution of Marriage.)  Thus, J.M. had the chance to voice her dissatisfaction with the separation agreement and the dissolution, but chose to endorse both.

{¶ 53} In sum, we conclude that the trial court erred in granting J.M. relief from judgment on the ground that she was mentally incompetent pursuant to Civ.R. 60(B)(5).

{¶ 54} Although J.M. did not raise any other Civ.R. 60(B) ground for relief, the trial court also granted J.M. relief from judgment on the basis of duress.  We conclude that the trial court erred in doing so.

{¶ 55} A separation agreement that is the product of duress is unenforceable. *Quebodeaux v. Quebodeaux*, 102 Ohio App.3d 502, 505 (9th Dist.1995); *Young v. Young*, 8 Ohio App.3d 52, 54 (10th Dist.1982).  Duress is a ground for relief from judgment under Civ.R. 60(B)(3), which includes the "[m]isconduct of an adverse party."  *Jackson v. Hendrickson*, 2d Dist. No. 21921, 2008-Ohio-491, ¶ 64.

{¶ 56} Under the law of duress, a party may avoid a contract induced by physical compulsion or improper threat.  *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245-46 (1990); 1 Restatement of the Law 2d, Contracts, Section 174-76 (1981).  To establish a contract is void as the product of duress, a complaining party must prove that:  (1) it involuntarily accepted the terms of another, (2) the circumstances permitted no other alternative, and (3) the circumstances were the result of coercive acts of the opposing party.  *Blodgett* at 246.  For duress to occur, the complaining party's assent to the contract must result from the opposing party's conduct, not the complaining party's necessities.  *Id.*  Courts seek to determine whether the opposing party's physical compulsion or improper threats "have overcome the will" of the complaining party and "have created a state of mind such that

[the complaining party] was induced to do an act which he would not otherwise have done and which he was not bound to do." *Tallmadge v. Robinson*, 158 Ohio St. 333, 340 (1952).

{¶ 57} In the case at bar, J.M. never explicitly stated why she signed the separation agreement. J.M. did testify repeatedly that she wanted to save her marriage, and we presume that that desire motivated her execution of the separation agreement. A.M., however, never threatened to end their marriage (or anything else) in order to convince J.M. to enter into the separation agreement. Rather, according to J.M., A.M. promised to give her what she wanted—his willingness to work on their marriage—if she agreed to give him what he wanted—a signed separation agreement. Additionally, A.M. did not force J.M. to involuntarily accept a list of contractual terms. The parties instead negotiated the terms of the separation agreement.

{¶ 58} It appears the trial court found that J.M. executed the separation agreement under duress due to the multiple stressors in her life, including A.M.'s affair, A.M.'s "sexual demands," the demands of caring for family members, and her daily responsibilities. Initially, we must address the vague reference to A.M.'s "sexual demands." While A.M. admitted to an affair, J.M. did not testify that A.M. made any sexual demands of her. Instead, J.M. stated that A.M. "requested" an open relationship. (Tr. at 55.) J.M. testified to initiating the relationship with J.F. herself, not at A.M.'s demand. More importantly, J.M. never claimed that A.M. threatened her regarding any aspect of their intimate relationships in order to coerce her to sign the separation agreement.

{¶ 59} Moreover, to the extent that J.M. had stressors in her life, they are irrelevant. As we stated above, duress must result from the opposing party's physical compulsion or improper threats. Duress does not occur if the stress and pressure of J.M.'s chaotic life drove her to sign the separation agreement.

{¶ 60} Finally, the trial court found it problematic that A.M. arranged the final meeting, during which he and J.M. signed the separation agreement, to occur at an establishment that served alcohol. However, again, to prove duress, J.M. must show that A.M. coerced her into consenting to the separation agreement by physical compulsion or improper threats. In the absence of evidence of such coercion, whether J.M. had alcohol to drink is irrelevant.

{¶ 61} On appeal, J.M. does not defend the trial court's decision to grant relief from judgment on the basis of duress. J.M., instead, argues that the facts support a finding that A.M. exercised undue influence over her. Like duress, undue influence is a ground for relief from judgment under Civ.R. 60(B)(3). *Lewis*, 10th Dist. No. 09AP-594, 2010-Ohio-1072, at ¶ 11.

{¶ 62} J.M., however, did not argue for relief from judgment based on undue influence in the trial court. Generally, a party waives the right to appeal an issue that the party could have, but did not, raise before the trial court. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34. Here, where J.M. did not argue and the trial court did not find that A.M. exerted undue influence over J.M., we will not consider that ground as a reason for granting J.M. relief from judgment.

{¶ 63} In the end, we reject each of the grounds on which the trial court granted J.M. relief from judgment. Because J.M. has not established any Civ.R. 60(B) ground entitling her to relief from judgment, the trial court erred in granting her motion. Accordingly, we sustain A.M.'s sole assignment of error.

{¶ 64} For the foregoing reasons, we sustain A.M.'s assignment of error, and we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment reversed.*

SADLER and JAMISON, JJ., concur.

————————————