[Cite as *Schultz v. Schultz*, 2023-Ohio-1712.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| DANA M. SCHULTZ, | CASE NO. 2022-P-0049 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| RICHARD E. SCHULTZ, | |
| Defendant-Appellant. | Trial Court No. 2020 DR 00002 |

## O P I N I O N

Decided: May 22, 2023
Judgment: Affirmed

*James P. Reddy, Jr.*, 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}   Appellant, Richard E. Schultz ("Mr. Schultz"), appeals from the judgment entry of the Portage County Court of Common Pleas, Domestic Relations Division, that granted him and appellee, Dana Schultz ("Ms. Schultz"), a divorce and adopted the parties' Agreement on Financial Issues and Agreement on Custody and Visitation.

{¶2}   In his sole assignment of error, Mr. Schultz contends the trial court abused its discretion by adopting the parties' agreements without conducting an investigation and/or holding a hearing to determine his mental state and capacity to knowingly and voluntarily enter into those agreements.  As evidence of his incapacity, he points to the parties' custody agreement, which provides him with the option to obtain a psychiatric

evaluation so that he may modify his supervised visitation with the parties' two minor children.

{¶3} After a careful review of the record and pertinent law, we find Mr. Schultz's assignment of error to be without merit. Mr. Schultz confuses psychiatric evaluations used as a tool to determine the best interest of children in custody proceedings and modifying supervised visitation with a mental status examination to determine the capacity to enter into contractual agreements. Further, he raises this issue for the first time on appeal, and he has failed to file a transcript of the final divorce hearing.

{¶4} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.

## Substantive and Procedural History

{¶5} The parties were married in 2008, and two children were born of the marriage—a boy in March 2011 and a girl in June 2016.

{¶6} In early January 2020, Ms. Schultz filed a complaint for divorce with children.

{¶7} As relevant to this appeal, in January 2021, in an agreed judgment entry, based upon the recommendation of the guardian ad litem ("GAL"), the parties agreed that they and the children would undergo psychological evaluations no later than March 17, 2021. The parties agreed Dr. Aimee Thomas ("Dr. Thomas") from Lighthouse Family Center would conduct the evaluations and the parties would split the cost.

{¶8} However, in numerous judgment entries, the court noted Mr. Schultz's incompliance with the order and his failure to contact Dr. Thomas. In April 2021, Ms. Schultz filed a motion to show cause in part because Mr. Schultz had failed to contact Dr. Thomas and complete his evaluation. In June 2021, in an agreed judgment entry, the

2

parties agreed that Mr. Schultz would immediately contact Dr. Thomas to schedule his appointments for the psychological evaluation. Several months later, in November 2021, the trial court issued a pretrial order, which in part noted that the court had previously ordered a psychological evaluation of both parties and that Mr. Schultz's evaluation remained uncompleted. A final pretrial was held in April 2022. Mr. Schultz acknowledged Dr. Thomas could complete the evaluation with the information she currently had and the opportunity to observe him with the children was not an issue. The trial court issued a notice in May 2022 that the court received the psychological evaluation with a parenting emphasis.

{¶9} During the pendency of the divorce proceedings, Mr. Schultz was convicted of domestic violence. Ms. Schultz was the victim, and a temporary criminal protection order and a civil protection order were issued for her protection against Mr. Schultz. The trial court ordered Mr. Schultz's visitation with the children to be supervised by his parents. The visit location was modified to Place of Peace, which provides a safe environment for supervised visitation and safe exchanges for families who are victims of domestic violence and/or sexual assault. These visits eventually transferred to video calls due to the COVID-19 pandemic.

{¶10} In early August, after holding a final divorce hearing, the trial court issued a judgment entry granting the parties a divorce and adopting their Agreement on Financial Issues and Agreement on Custody and Visitation. Ms. Schultz was named the residential parent and legal custodian.

{¶11} In the Agreement on Custody and Visitation, the parties agreed Mr. Schultz's visitations would continue to be supervised and they would occur either once per week for one hour or every other week for two hours. The agreement further provided

3

Mr. Schultz with an option to undergo a psychiatric evaluation no later than December 15, 2022, and, if he did so, he could file a motion to modify the supervised visitation. If Mr. Schultz elected not to undergo the evaluation, the agreement provided that his supervised visitation would continue until he chooses to do so. The agreement requiring him to complete a psychiatric evaluation was based on the issues set forth in one of the GAL's reports. (During the case, the first GAL voluntarily withdrew, and a second GAL was appointed. Both submitted final reports for the court.)

**{¶12}** Mr. Schultz raises one assignment of error for our review:

**{¶13}** "The trial court abused its discretion by adopting the settlement agreement and agreement on custody and visitation without conducting an investigation and full hearing to determine and adjudicate the appellant's mental state and capacity to knowingly and voluntarily enter into said agreement when the trial court gave the option to appellant to obtain a psychiatric evaluation."

## Capacity to Contract

**{¶14}** In his sole assignment of error, Mr. Schultz contends the trial court abused its discretion by adopting the parties' agreements without determining whether he had the capacity to enter into the parties' agreements voluntarily and knowingly when the court gave him an option to obtain a psychiatric evaluation in order to modify his supervised visitation.

**{¶15}** Once a settlement agreement is executed, both parties must appear before the court and verify that each entered into the agreement voluntarily and that both are satisfied with the terms of the agreement. *Kolar v. Shapiro*, 11th Dist. Lake No. 2007-L-148, 2008-Ohio-2504, ¶ 19. Once the court incorporates the agreement into a decree of dissolution, the agreement loses its separate identity as a contract. *Id.* A decision

4

whether or not to enforce the terms of a settlement agreement is a discretionary one. *Id.* Accordingly, the trial court's decision will be reviewed for an abuse of discretion. *Id.* Similarly, custody determinations, including decisions involving shared parenting plans or "custody agreements," are reviewed under an abuse of discretion standard. *Liston v. Liston*, 11th Dist. Portage No. 2011-P-0068, 2012-Ohio-3031, ¶ 15.

{¶16} An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). "When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error." *Id.* at ¶ 67. "By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.*

{¶17} Mr. Schultz confuses the need for psychiatric evaluations to be used as a tool in determining the best interest of children in custody proceedings and modifying supervised visitation with a mental status examination to determine the capacity to enter into contractual agreements. The fact that the parties and the court determined the need for the first is not evidence of a mandate for the second.

{¶18} Trial courts use psychological and psychiatric evaluations in custody determinations because the psychological well-being of the parties is an important factor in determining the best interest of the children. *Yazdani-Isfehani v. Yazdani-Isfehani*, 170 Ohio App.3d 1, 2006-Ohio-7105, 865 N.E.2d 924, ¶ 35 (4th Dist.).

{¶19} Thus, R.C. 3109.04(C) provides: "Prior to trial, the court may cause an investigation to be made as to character, family relations, past conduct, earning ability,

5

and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric evaluations."

{¶20} Similarly, Civ.R. 35(A) states: "When the mental or physical condition * * * of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit himself to a physical or mental examination or to produce for such examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." (Emphasis added.)

{¶21} Mr. Schultz is attempting to use an option to undergo a psychiatric evaluation in his custody agreement as evidence that he lacked the capacity to enter into the parties' agreements at the final divorce hearing. However, when parties enter into a settlement agreement in the presence of the trial court, that agreement constitutes a binding contract. *Miller v. Miller*, 7th Dist. Mahoning No. 05 MA 111, 2006-Ohio-1288, ¶ 11. Thus, principles of contract law apply to determine Mr. Schultz's capacity to enter into a contract. *See id.*

{¶22} The proper test for mental competency to contract is whether the person claimed to be incompetent understood the nature of the transaction and the effects of his or her own actions. *Id.* In other words, to avoid a contract on grounds of incompetence, there must be such weakness or derangement of mental powers as to make the person wholly unable to enter into business transactions that would require him to look after his own interests and deal on equal terms with persons of ordinary intellectual vigor. *In re J.M. v. A.M.*, 10th Dist. Franklin No. 19AP-832, 2022-Ohio-1092, ¶ 43.

6

Case No. 2022-P-0049

{¶23} Most fundamentally, a party seeking to void a contract because of lack of mental capacity has the burden of proof by clear and convincing evidence. *Miller* at ¶ 11. A party may raise the issue of whether he or she was competent at the time of entering into an agreed judgment entry in a motion for relief from judgment. *In re K.K.*, 179 Ohio App.3d 220, 2008-Ohio-5772, 901 N.E.2d 283, ¶ 67 (2d Dist.); *In re J.M.* at ¶ 42; *Bretzfelder v. Bretzfelder*, 9th Dist. Summit No. 23674, 2008-Ohio-2669, ¶ 6.

{¶24} For instance, in *In re K.K.*, the Second District reversed the trial court's denial of appellant's motion for relief from judgment in which she contested her mental competency to enter into the parties' settlement agreement because she submitted affidavits of her and her treating psychiatrist that raised the issue of whether she was competent at the time she entered into the in-court agreement. *Id.* at ¶ 68. Thus, the Second District determined the trial court should have held a hearing to determine whether the appellant was, in fact, incompetent when she entered into the in-court agreement. *Id.* at ¶ 73.

{¶25} In this case, Mr. Schultz raises the issue of his alleged incompetence for the first time on appeal. "'It is a well established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court.'" *Bretzfelder* at ¶ 7, quoting *Bank One N.A. v. Swartz,* 9th Dist. Lorain No. 03CA008308, 2004-Ohio-1986, ¶ 17 (rejecting a similar argument of incompetency to enter into a settlement agreement for the first time on appeal). The failure to raise this issue before the trial court forfeited it for purposes of appeal. *Id.*

7

{¶26} In addition, Mr. Schultz failed to file a transcript of the final divorce hearing pursuant to App.R. 9(B), nor did he file a statement of the evidence pursuant to App.R. 9(C). Thus, we must presume the regularity of the trial court proceedings, which includes Mr. Schultz's capacity to enter into the parties' agreements that the trial court incorporated in the final divorce decree. *See Dottore v. Feathers*, 11th Dist. Portage No. 2007-P-0073, 2009-Ohio-539, ¶ 10; *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm").

{¶27} Mr. Schultz's sole assignment of error is without merit.

{¶28} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.


JOHN J. EKLUND, P.J.,

EUGENE A. LUCCI, J.,

concur.